A. C. & A. B. TREADWELL & Co. *v.* ANGLO-AMERICAN PACKING Co.

FOWLER BROTHERS *v.* A. C. & A. B. TREADWELL & Co.

(*Circuit Court, W. D. Tennessee.   July 26, 1882.*)

1. SALES—TERMS OF CONTRACT—"CURED MEAT."

Where a sale of "cured meat" was made by a broker to a merchant at Memphis, that term is to be interpreted according to the understanding of the trade at Memphis, and not according to that where the seller resided, if there be any substantial difference between the two.

2. SALES—BILL OF LADING WITH DRAFT ATTACHED—DELIVERY—RISK OF TRANS-
PORTATION.

Where goods are sold and delivered to a carrier, with bill of lading in the
name of the shipper indorsed to the purchaser, to be delivered only when the
draft is paid, the ownership remains with the seller until the draft shall be
paid, and the goods are at his risk. But when the payment is made, the owner-
ship and risk change to the purchaser.

These two cases were heard together, but only so much of the
charge of the court and the facts relating to the points of law that
were disputed by counsel are reported here.

In October, 1880, the Treadwells purchased through a broker, at
Memphis, one car load of meat, from the Anglo-American Packing
& Provision Company, which, according to the memorandum of
contract, was to be "cured meat," to be delivered at Atchison, Kan-
sas, "free on board," freight not more that 42 cents. The bill of
lading was to the order of the Anglo-American Company, indorsed
"Deliver, to A. B. & A. C. Treadwell & Co.," to which was attached
a draft, payable at sight, for the price of the meat. This was sent to
a bank at Memphis, with instructions to deliver to the Treadwells
only in payment of the draft. The draft was paid November 3,
1880, and the bill of lading delivered.

When the meat arrived it was alleged to be spoiled, whereupon
the purchasers notified the shippers that they held it subject to their
orders, and demanded the refunding of the money and expenses,
which was refused. The Treadwells brought suit by attachment, in
the state court, and the meat being attached, was sold. The Tread-
wells, in the mean time, having through another broker ordered a
car load of meat from Fowler Brothers, of Chicago, it came billed by
the Anglo-American Company, and a draft from them for the price
on account of Fowler Brothers. The Treadwells refused to pay the
draft, and attached this car load as the property of the Anglo-
American Company, whereupon the Fowlers brought suit for the
price of the meat. The suits were removed to the United States
court by the non-resident parties. The jury found on the facts that
the meat was not cured according to the contract, and gave a verdict
for the Treadwells for $2,129.75, and that the second car load of
meat belonged to Fowler Brothers, and not the Anglo-American
Company, and gave a verdict in their favor for the price, $1,962.32,
against the Treadwells. The defence contended that if the meat
was spoiled on arrival it was because of negligence in transportation
or natural causes after shipment, and that the meat was at the risk

of the purchaser. They introduced proof tending to show that the meat was "cured," according to the understanding of that term in Kansas, when it left the shipper. The plaintiff introduced proof tending to show that "cured meat," as that term is understood in the trade at Memphis, would not spoil in a transportation of 14 days.

The two cases were heard together.

*Clapp & Beard*, for the Treadwells.

*Taylor & Carroll*, for Packing Co. and Fowler Bros.

HAMMOND, D. J., (*charging jury*.) The agreement contemplated "cured meat." The meaning of this term is to be interpreted by you according to the understanding of the trade at Memphis, if there be any difference between that term as it is used there and at Atchison, Kansas. The agreement was made at Memphis between a purchaser and a broker acting as the agent of the seller, although he may have been the agent of both parties. The meat was to be used in the Memphis market, and I think there can be no doubt that it was to be "cured" according to the understanding of the parties at Memphis. But if the meat was properly cured, and spoiled in transit, where does the loss fall? I think there is no reasonable doubt, under the decisions of the supreme court of the United States, which I shall call to your attention, that if you find, as there is no dispute, that this meat was not to be delivered to the purchasers until they paid the draft attached to the bill of lading, the ownership remained in the sellers and at their risk until the draft was paid on the third day of November. After that payment, the ownership changed to the purchasers, and the meat was at their risk.

If, therefore, the meat left Kansas properly cured according to the contract, and was spoiled while in transit prior to the third day of November, the loss is that of the seller; but if afterwards, on the purchaser. *Dows* v. *Nat. Exchange Bank*, 91 U. S. 619; *The Merrimack*, 8 Cranch, 317; *The Venus*, Id. 253; *The Frances*, Id. 359; S. C. 9 Cranch, 183; *The St. Joze Indiano*, 1 Wheat. 208. However this point may be found under the English authorities cited by counsel, or the state cases relied on, I am of opinion that the supreme court has ruled the principle as I have indicated. They cite approvingly the sections of Mr. Benjamin's work on Sales, where he criticises and seeks to reconcile the apparent conflict in the cases, and I have no hesitancy in ruling according to the principle thus established, although the cases may not be exactly precedents for this one. The older cases arose under the law of prize, and it was estab-

lished that where the foreign seller attached as a condition that the goods were not to be delivered until the price was paid, they remained enemy goods, and subject to capture as such. I see no distinction in principle between those cases and this.