## FORTY SACKS OF WOOL.

*(Circuit Court, D. Massachusetts. December 20, 1882.)*

1. CUSTOMS—REVENUE LAWS—INTENT TO DEFRAUD.

  Where wool was sought to be subjected to forfeiture for intent to defraud the customs revenue laws, an amended information that the wool was obtained otherwise than by purchase, namely, by importation, is insufficient, as importation is not a mode of acquiring property.

2. PURCHASE OF GOODS—TITLE, WHEN PASSES.

  Where goods are purchased at a certain place and are sent by bill of lading indorsed to a third person as security for a draft, the property does not pass until the draft has been accepted or paid, or there has been a waiver of acceptance or payment.

3. SAME.

  If a buyer in a doubtful case should state his purchase as having been made at either of two places, he is not to forfeit his property unless there is direct evidence that he made a willful misstatement with an actual intent to defraud.

This information charged that J. H. Mooney, the owner and claimant of the wool proceeded against, had imported it from Montreal into the United States by means of a false and fraudulent invoice, which declared the market value of the goods at Montreal to be 32 cents a pound, when it was much more.

The invoice, when produced, was found to contain no statement of market value; but it set out a purchase of the goods at Montreal, for 32 cents a pound, which required no averment of market value. Thereupon, by consent, an amendment was filed, of which the substantial allegations were:

"That it was therein falsely set forth and stated that the said 40 sacks of wool were purchased by said Mooney at said Montreal in the said month of February for 32 cents, including all charges, whereas, in truth and in fact, they were not purchased in Montreal, nor in said month of February, nor at the price and cost of 32 cents a pound, including all charges, but the said statement was wholly false, as the said Mooney at the time of making said entry well knew.

"And the plaintiffs say that the said wool was procured by the said Mooney at said Montreal, on said fifth day of February, otherwise than by purchase; that is to say, the said Mooney had imported the same from Liverpool, England, into said Canada, and had, prior to the importation thereof into the United States, at St. Albans, as aforesaid, repacked the said wool in new and different packages from those in which it had been imported from said Liverpool as aforesaid, * * * which invoice was false, in that it did not set forth the manner in which said wool had been procured and repacked as aforesaid, and that it did not set forth the actual market value of said wool at Montreal."

It appeared in evidence that Mooney obtained a letter of credit from the Merchants' Bank of Canada, doing business at Montreal, which he sent to Ronald, Sons & Co., of Liverpool, wool merchants, who shipped this wool with other lots to Montreal, by way of Halifax, and took a bill of lading "to order," which they indorsed. They drew a draft on Mooney for the price of all the wool, payable to the order of the Merchants' Bank of Canada, and sent the bill of lading, invoice, and draft to the bank. The draft was presented to Mooney, who accepted and in due course paid it. The bill of lading was delivered to him, and he paid the freight and removed the wool into his warehouse. The wool did not cost Mooney above 32 cents a pound.

The United States asked the judge to rule that the purchase was made by Mooney in Liverpool and not in Montreal, which he refused to do; he likewise rejected evidence of the market price of wool at Montreal, which was offered by both sides; and upon the whole case he ordered a verdict for the claimant. The United States excepted to all these rulings and brought this writ of error.

*G. P. Sanger*, Dist. Atty., for plaintiff in error.

*C. L. Woodbury* and *J. P. Tucker*, for defendants in error.

LOWELL, C. J.   If this wool was worth more than 32 cents a pound at Montreal, the collector at St. Albans, upon report of the appraisers to that effect, would have been bound to collect a larger duty than if its value was 32 cents or less; but the importer was under no obligation to state in his invoice what he may have supposed the market value to be, unless he obtained the goods "otherwise than by purchase."

The theory of the amended information is that this wool was obtained otherwise than by purchase, namely, by importation from Liverpool; but, as importation is not a mode of acquiring property, this ground was abandoned in argument, and the point now taken is that the purchase was made at Liverpool, and not at Montreal; or that, at least, this question should have been submitted to the jury. It is admitted that every fact is truly stated in the invoice unless it be the place of purchase.   The goods were bought, and they cost at Montreal less than 32 cents; but the government insists that they were bought at Liverpool.   If this be so, the information, as I have already said, does not charge this as the false statement, and the government cannot prevail.

Even if the information was sufficient, still the fact is that these goods were bought at Montreal.   The cases cited by both parties show that where goods are sent, as these were sent, by a bill of lading indorsed to a third person as security for a draft, the property does not pass, at law, until the draft has been accepted or paid, or there has been a waiver of acceptance or payment.   Until one of these things is done, the goods cannot be attached as the property of the buyer; and if he should obtain possession of them, he cannot give a good title even to a *bona fide* purchaser.   *Dows* v. *Nat. Exch. Bank*, 91 U. S. 618; *Jenkins* v. *Brown*, 14 Q. B. 496; *Newcomb* v. *Boston & L. R. Co.* 115 Mass. 230, and two cases immediately preceding and two following that case in the report; *Shepherd* v. *Harrison*, L. R. 4 Q. B. 197, 493; L. R. 5 H. L. 116; Benj. Sales, (2d Am. Ed.) § 399, and cases.

No doubt the buyer has an equitable title.   If the bankers, for example, had sold the goods and indorsed the bill of lading to a stranger, Mooney might have recovered of them whatever the goods were worth above the original cost.   But the legal title came to him in Montreal.   Still further, the revenue laws, though liberally construed for the government, must be construed reasonably, and as an

*importer* may be supposed to understand them. If the buyer, in a doubtful case, should state the purchase either way, as having been made in Liverpool or in Montreal, he is not to lose his property, unless there is some *scintilla* of evidence that he made a willful misstatement with intent to defraud.

In this case there was no evidence tending in the slightest degree to prove fraud in any direct way. The United States endeavor to prove an actual intention to defraud them, without which no forfeiture can be imposed, (St. 1874, c. 391, § 16; 18 St. 189,) argumentatively, as thus: Liverpool was the true place of purchase; when, therefore, the claimant gave Montreal as the place, he must have had a motive; that motive must have been to deceive the appraisers by stating a particular purchase which they would take as evidence of market value. If this roundabout way of proving actual fraud, without any other single fact or circumstance corroborating that view of the transaction, were sufficient to establish a *prima facie* case, it would, of course, be competent to prove that the market price did not exceed 32 cents at Montreal. But the judge ruled out evidence of this, and ordered a verdict, very properly, because the fact as stated was true, and even if not, there was no reason to suppose that anything but a most natural mistake had been committed. Judgment affirmed.