### SCHREIBER v. ANDREWS et al.

(Circuit Court of Appeals, Eighth Circuit. April 30, 1900.)

No. 1,306.

1. SALES—CONSTRUCTION OF CONTRACT—BREACH OF WARRANTY—NONPERFORMANCE—DAMAGES.

Defendant telegraphed plaintiffs, in regard to wheat offered for sale, "Take fifty-eight net, fifteen thousand bushels two hard," and on next day again wired, "If you can use it at fifty-seven, will sell." To the latter telegram plaintiffs responded by wire, "Accept your fifteen thousand 2 hard fifty-seven track Otis." Afterwards defendant wrote plaintiffs that, in case some of the wheat failed to grade, he wanted them to notify him, as F. & Co. looked after his business at the point to which the wheat was to be shipped. As fast as the cars were delivered on the track, the defendant took bills of lading in his own name, indorsed them, and drew on plaintiffs for the contract price of the wheat; and they paid these drafts

before the inspection. The first cars of wheat shipped graded No. 2, but, upon the arrival of a car which graded No. 3, plaintiffs notified defendant of the fact, and that they had applied it on the contract at 1½ cents off. Twenty-one cars were delivered, 7 of which graded No. 2 hard, and 14 No. 3, so that the plaintiffs overpaid for the wheat delivered $489.60. When all but two cars had been shipped, defendant telegraphed plaintiffs: "Can't stand one-half off on car graded three. Turn them over to F.,"—and, plaintiffs refusing to obey the instruction, defendant refused to make further shipments to complete the contract. *Held*, that the telegrams first exchanged constituted a complete contract for the sale of 15,000 bushels of No. 2 hard wheat, and contained an implied warranty that the wheat should be of that grade, and entitled plaintiffs to recover of defendant their overpayments for wheat delivered, and damages for breach of warranty of the grade of the wheat and for the failure to complete the performance of the contract.

2. SAME—DELIVERY—WHEN TITLE PASSES—INSPECTION BY VENDEE.

Since defendant delivered the wheat at the point of shipment, took bills of lading in his own name, indorsed them, drew for and received payment of the full purchase price before inspection, the title passed to plaintiffs when the drafts were paid, and the purpose of inspection by plaintiffs was to determine whether the wheat complied with their contract with defendant for No. 2 hard wheat, and not to select wheat of that quality from the shipments made by defendant.

In Error to the Circuit Court of the United States for the Western District of Missouri.

Samuel W. Moore (Gardiner Lathrop, Thomas H. Reynolds, Thomas R. Morrow, and John M. Fox, on the brief), for plaintiff in error.

Edwin C. Meservey (Arba F. Pierce and Charles W. German, on the brief), for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. This case presents but one question, and that is whether the plaintiff in error, L. Schreiber, made a contract to sell and deliver to C. C. Andrews and C. G. Benton, the defendants in error, 15,000 bushels of No. 2 hard wheat, whose compliance with the contract in grade and weight was to be determined by an inspector and weighmaster at Kansas City, or a contract to sell and deliver out of a larger quantity to be shipped by him 15,000 bushels of No. 2 hard wheat which the inspector and weighmaster were to select out of the larger quantity, and identify. If he made the former contract, the judgment below must be affirmed; if the latter, it must be reversed. It is conceded that the parties made a contract for the sale of wheat subject to an inspection and determination of its grade and weight at Kansas City. The question is whether that inspector was to determine how far the wheat complied with the contract, and thus to form a basis for the measure of damages for failure to comply with it, or was to select out of a larger quantity, and thus to identify the wheat sold; and this question must be determined by the correspondence which constituted the contract, and by the acts of the parties under it. That correspondence, so far as it is material to this issue, ran in this way: On July 23, 1897, Schreiber telegraphed from Otis, Kan., to the defendants in error at Kansas City, "Take fifty-eight net, fifteen thousand bushels two hard." On July

24th he telegraphed to them, "If you can use it at fifty-seven, will sell," and they answered: "Accept your fifteen thousand 2 hard fifty-seven track Otis. Rush shipment." On the same day they wrote: "We now have your wire offering 15,000 bushels two hard at 57 cents, your track, which we now confirm for fifteen-day shipment. * * * Please bill wheat to us here, making draft without exchange, leaving us fair margins;" and Schreiber wrote them: "We expeck you peple to give us 10–15 days. But I believe we can mack it next week as we sheap 3 lagh cars Mondy morng. Now as you are stranzer to me in case some of the wheet sult file to graat I want you to notify me by wir as I hav Mr. E. D. Fisher & Com. to look after my biznes in K. C. so I will mack draft within 10.00 to $20.00 per car and if you want some refrance abut me or Mr. Fisher and J. V. Brinkman Co. Bank at Gt. Bend as I du may bizness thru ther bank." On July 28, 1897, Schreiber commenced shipping the wheat. He took the bills of lading in his own name, indorsed them, and then forwarded them with drafts attached for the purchase price of the No. 2 hard wheat, and the defendants in error paid the drafts and took the bills of lading as fast as they were presented, and before the wheat for which they were respectively drawn was inspected. The first cars of wheat shipped graded No. 2 hard, but on July 31, 1897, a car arrived which graded No. 3 wheat, and thereupon the defendants in error notified Schreiber of the fact, and that they had applied it to the contract at 1½ cents off. Schreiber shipped 21 cars. Seven of them graded No. 2 hard wheat and 14 of them graded No. 3 wheat. On August 2, 1897, all but two cars had been shipped, and the vendees had given notice of the grade of each carload as soon as it was inspected. On that day Schreiber telegraphed the defendants in error: "Can't stand one-half off on car graded three. Turn them over to Fisher." The defendants in error refused to obey this instruction, and applied the wheat, which they had already paid for, on their contract. Schreiber then refused to complete the performance of his agreement. He had drawn, and the defendants in error had paid him, for more wheat than he had delivered. Thereupon the vendees sued him, and recovered $489.60 for overpayments, $166.95 for breach of warranty of the grade of the wheat, and $41.90 damages for his failure to fulfill the contract. The plaintiff in error presented a counterclaim for the conversion of the wheat which graded No. 3, but the court held that the wheat was no longer his after he had shipped it and received the purchase price of it, and that, consequently, there was no conversion of it as against him. 93 Fed. 367.

These conclusions of the court below are assailed on the ground that the agreement between the parties was that the vendor should ship a large quantity of wheat of different grades to the vendees, that the inspector should select out of all this wheat 15,000 bushels of No. 2 hard, that the vendees should buy and pay for this wheat so selected, and should hold all other wheat received from Schreiber for him, and should turn it over to Fisher. There are several reasons why this contention cannot be maintained. In the first place, the contract was complete when the telegrams and letters of July 24, 1897, had

passed. They constitute a plain agreement for the sale of 15,000 bushels of No. 2 hard wheat to be delivered by the vendor on the track at Otis. Schreiber's statement in his letter of that date that in case some of the wheat should fail to grade he wanted the vendees to notify him by wire, as he had Mr. E. D. Fisher & Co. to look after his business in Kansas City, was no notice that he intended to ship No. 3 wheat, or that he wanted any of the wheat he shipped applied in any other way than on the contract of sale. Under that contract he had no right to ship to the vendees any wheat that was not No. 2 hard wheat, nor any wheat which he did not intend to apply on the contract, because the only wheat which the vendees had bought or had agreed to receive was the 15,000 bushels of No. 2 hard wheat. Moreover, the contract contained an implied warranty that the wheat delivered to fulfill it should be No. 2 hard, and, when some of it proved to be of an inferior grade, the vendees had the option to return it, and to sue the vendor for the purchase price they had paid, or to retain it, and recover the difference between its actual value and the value it would have had if it had filled the warranty. Whalen v. Gordon, 37 C. C. A. 70, 78, 95 Fed. 305, 312; Lyon v. Bertram, 20 How. 149, 154, 15 L. Ed. 847; Woodruff v. Graddy, 91 Ga. 333, 335, 17 S. E. 264; Day v. Pool, 52 N. Y. 416, 420; Weed v. Dyer, 53 Ark. 155, 159, 13 S. W. 592; Manufacturing Co. v. Vroman, 35 Mich. 310; 28 Am. & Eng. Enc. Law, 814; Benj. Sales, § 894. Again, the vendor delivered the wheat on the track at Otis, took the bills of lading in his own name, indorsed them, drew for and received payment of the full purchase price of all this wheat before it was inspected. The title to goods consigned to a purchaser by the indorsement of the bill of lading and an attached draft for the purchase price passes to the vendee when the draft is paid. Erwin v. Harris, 87 Ga. 333, 335, 13 S. E. 513; Benj. Sales (2d Ed.) § 399; Farlow v. Treadwell (C. C.) 13 Fed. 22, 24; Forty Sacks of Wool (C. C.) 14 Fed. 643, 645; Dows v. Bank, 91 U. S. 618, 631, 23 L. Ed. 214; The Merrimack, 8 Cranch, 317, 332, 3 L. Ed. 375. The result is that the only office of the inspection and weighing of the wheat was to determine in what respect and how far it complied with the contract. Their office could not have been and was not to select and identify the property sold, because that was selected by the vendor, and delivered and paid for before the inspection could be made. The contract was to sell and deliver 15,000 bushels of No. 2 hard wheat, without any intimation that the vendor had or would deliver any other wheat. The delivery was of wheat to fulfill that contract. The contract, the delivery of and the payment for each carload of the wheat were made, and the title to it passed to the purchaser before the inspection and weighing were or could be had, and the conclusion is irresistible that they neither conditioned the sale nor the identity of the property sold. The judgment is affirmed.