## McKee v. Western Union Telegraph Company.

(Decided March 20, 1914.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

1. Telegraphs—Relation of Company To Sender and Addressee of Message.—A telegraph company is the agent of neither the sender nor addressee of a telegram, but an independent principal and liable to either for the proximate result of its negligence.

2. Telegraphs—When Company Not Liable To Sender of Message For Mistake In Its Transmission.—A telegraph company must answer to the sender of a telegram erroneously transmitted by it, where the sender has himself acted in good faith on the error to his injury. But no responsibility can be made to rest upon the telegraph company for the erroneous transmission of a telegram, where the sender, after discovery of the error of the company, gratuitously assumes the responsibility for the ad-dressee's action in obeying the instructions contained in the telegram as erroneously transmitted by the company.

PAUL B. COLLINS, JOHN T. BASHAW for appellant.

RICHARDS & HARRIS and GEORGE H. FEARONS for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellant, John J. McKee, complaining that he was damaged by the failure of the appellee, Western Union Telegraph Company, to transmit and deliver, in the form and words in which it was received from him, a telegram addressed to Henning, Chambers & Co., Brokers, of Louisville, with the concurrence of appellee submitted to the decision of the court below, upon an agreed case, as allowed by Section 637, Civil Code, the question whether it was liable for the damages claimed by appellant.

In addition to the agreed facts here presented the record in the court below consisted of the petition and answer; the first alleging the delivery by appellant of the telegram to appellee's Lawrenceburg agent; that as so delivered it instructed Henning, Cham-

bers & Co., Brokers, of Louisville, to purchase at the opening of the market the following day 5,000 bushels May oats for appellant, but that the telegram as delivered by appellee to Henning, Chambers & Co., at Louisville, contained a direction to them to buy for appellant 50,000 bushels of oats, instead of the 5,000 actually ordered by appellant; that the brokers, acting upon this mistaken order, made a purchase for appellant of 50,000 bushels of oats, which was 45,000 bushels more than he had ordered; that upon being notified by a letter from the brokers of their purchase of the 50,000 bushels of oats, which gave appellant the first notice he received of the mistake that had been made by appellee's agents in transmitting and delivering his telegram, he notified appellee through its Louisville agents of the mistake that had been made, and demanded of it its correction and that it take off his hands the excess of 45,000 bushels in the purchase of oats made by the brokers by reason of its negligence in failing to transmit and deliver the telegram as received by it from appellant; that appellee refused to make any correction of the mistake or to take the excess of oats off his hands, and that he thereupon ordered the brokers to sell to the best advantage the 45,000 bushels of oats not ordered by him, with which order they complied, but in doing so appellant sustained a loss of $205.00, for which judgment was prayed against appellee with costs. The answer simply traversed the allegations of the petition.

The agreed facts are as follows:

"First. On September 5, 1911, John McKee delivered to the agent of the Western Union Telegraph Company at Lawrenceburg, Ky., a telegram addressed to Henning, Chambers & Company in Louisville, and paid the charges for transmitting and delivering same. Said telegram was in words and figures as follows:

'Lawrenceburg, Ky., Sept. 5, 1911.

'Henning, Chambers & Co.,

116 S. Fifth St., Louisville, Ky.

'Buy five thousand bushels May oats at the opening of the market tomorrow and report by letter and not by telegram.

(Signed)        'JNO. MCKEE,'

"Second. The said telegram when delivered to the addressee, Henning, Chambers & Co., in Louisville, read: 'Buy fifty thousand bushels', etc., the difference between the telegram as received and as delivered being that the word 'five' before the word 'thousand' as written in the telegram received by the company's agent at Lawrenceburg was changed to read 'fifty.'

"Third. Said telegraphic order to buy oats was executed by plaintiff's brokers, the addressee, Henning, Chambers & Co., in the terms in which said telegram was delivered to said addressee, to-wit: Fifty thousand bushels, and not in the terms written by this plaintiff, to-wit: Five thousand bushels.

"Fourth. When notified by Henning, Chambers & Co:, of this purchase of fifty thousand bushels of May oats, said McKee notified the defendant corporation and its manager at Louisville, Kentucky, and requested and demanded said corporation and its said manager to correct said mistake and wrong done him, which was refused.

"Fifth. Thereupon said McKee accepted said excess of forty-five thousand bushels of oats and ordered his brokers, said Henning, Chambers & Co. to sell to the best advantage the said forty-five thousand bushels of oats not originally ordered by him.

"Sixth. Said Henning, Chambers & Co., sold said forty-five thousand bushels of oats pursuant to said McKee's instructions, and to his loss in the sum of $205.

"Seventh. Said forty-five thousand bushels of oats were bought by said Henning, Chambers & Co. at forty-nine cents on the morning of September 6th. Between the time of purchase and the time of sale the highest price quoted on the Chicago market for such oats was 49 1-8 cents a bushel; and there was no time at which the same could have been sold at a price which would have realized a sum equal to their purchase price, plus the commission of said Henning, Chambers & Co., on the purchase thereof.

"The plaintiff, McKee, contends that the Western Union Telegraph Company is liable to him for the loss sustained by him in the purchase and sale of the said forty-five thousand bushels of May oats. The defendant, Western Union Telegraph Company, contends that there was never a meeting of minds between said McKee and said brokers, Henning, Chambers & Co.; that said Mc-

Kee was not bound to accept more than the five thousand bushels of oats actually ordered by him; that his acceptance of the forty-five thousand bushels not ordered by him was a voluntary act on his part, and for any loss resulting to him because of said acceptance and sale the said telegraph company disclaims all responsibility."

A trial by jury was waived and following the submission of the case to the court, judgment was entered dismissing the petition at appellant's cost; and from that judgment he has appealed.

It is conceded by the parties that the appellee, Western Union Telegraph Company, is neither the agent nor servant of the sender or addressee of a telegram transmitted by it, but that its relation to both is that of an independent contractor or public carrier.    Upon looking, however, to the authorities upon this subject we find them far from harmonious.   Some of them hold that the telegraph company is the agent of the sender alone and that he is bound by the message as delivered by the company.    Others, that the telegraph company is the agent of both the sender and addressee, and therefore liable to both in contract.   Yet others, that the telegraph company is, the agent of neither the sender nor addressee, but an independent principal and liable to either for the proximate result of its negligence.   The latter doctrine obtains in England, in many of the states of this country, and was approved by this court in Postal Telegraph Co. v. Schaefer, 110 Ky., 907, in the opinion of which it is said:

"It is the contention of appellee that appellant was their agent in sending the telegram to Bernstein & Co., and that the delivery of the erroneous message created and gave rise to a valid, enforcible contract on their part to deliver the potatoes to the sendee at the price named, and this view seems to have been taken by the Ohio magistrate, who presided in the trial of the suit instituted by Bernstein & Co. against plaintiff; but, in our opinion, this view of the law is an erroneous one, and is in conflict with the great weight of authority both in England and in this country. Gray, in his treatise on Communications by Telegram (page 189) says: 'A telegraph company may perhaps be called a special agent, since it is employed to do a particular act, namely, to communicate a certain message. If so, the employer is responsible on the message as delivered only where that

message is the one which he authorized the company to communicate as distinguished from a certain message.' And he refers to Story Ag. (8th. Ed.) Secs. 126-133. The same author says: "A person who employs a telegraph company authorizes it and holds it out as authorized, only to communicate a certain message and, while he is responsible upon the message if the company duly delivered it, he is not responsible upon any other message which the company may deliver in its stead.' This exact question was fully considered in the case of Pepper v. Telegraph Co., decided by the Supreme Court of Tennessee and reported in 11 S. W. 783, (4 L. R. A. 66)."

But without further considering this aspect of the case, it seems to be well settled that while a telegraph company must answer to the sender of a telegram erroneously transmitted by the company, where the sender has himself acted in good faith on the error to his injury, it is, on the other hand, equally well settled that no responsibility can be made to rest upon the telegraph company for the erroneous transmission of a telegram, where the sender, after discovery of the error of the company, gratuitously assumes the responsibility for the addressee's action in obeying the instructions contained in the telegram as erroneously transmitted by the company, as seems to be the situation presented in the instant case. Appellant, as sender of the telegram to Henning, Chambers & Co., was not bound by its terms as erroneously transmitted and delivered to them by appellee, and when advised by Henning, Chambers & Co. of the action taken by them pursuant to the erroneous advice contained in the telegram, appellant could have refused to be bound for the over purchase of oats made by them and thereby saved himself from loss; but instead of doing this, according to the agreed facts, he directed them to sell on the best terms possible the excess over 5,000 bushels of the oats purchased by them, and demanded of appellee that it correct the mistake it had made in the telegram and assume responsibility for the loss he sustained resulting, as claimed, from its erroneous transmission and delivery of the telegram to the addressee. It cannot, therefore, be said that appellant acted reasonably and in good faith on the error committed by appellee to his prejudice. If, without knowledge of the error committed by appellee in transmitting and delivering the telegram to Henning, Chambers & Co., he

had directed the sale of the oats they purchased for him and by such sale suffered loss, appellee would, in that event, have been liable to him for the damages he thereby sustained, the measure of which would have been the difference, if any, between the price he was forced by appellee's error to pay for the oats and their market price immediately after the mistake was discovered; but when, after discovering the mistake, he accepted and approved what had been done by Henning, Chambers & Co., in obedience to the telegram as erroneously transmitted and delivered to them by appellee, and directed them to sell the oats, he condoned the error committed by appellee in the transmission and delivery of the telegram, at least to the extent of releasing them from liability for the loss sustained by him in the sale of the oats.

The precise question before us does not seem to have been decided in this jurisdiction, but it has elsewhere been passed on. But only one of these decisions, Eureka Cotton Mills v. W. U. Tel. Co., 88 S. C., 498, can be said to sustain appellant's contention, which is that appellee, as an independent principal or public carrier, is under a liability to reimburse appellant for whatever loss he sustained resulting from its erroneous transmission of the telegram, regardless of the fact that he was not bound by what the addressee did in acting upon the erroneous telegram and of the further fact of his acceptance of such action of the addressee after he received notice of appellee's erroneous transmission of the telegram. In Eureka Cotton Mills vs. W. U. Tel. Co., supra, the facts seemed to be that the plaintiff received a telegram from the Jenks Spinning Co. inquiring if they would authorize the Spinning Company to sell for it on commission 100,000 pounds of yarn at 24 cts. a pound. By way of reply the plaintiff delivered to the Telegraph Company a telegram which informed the Spinning Company that it would sell the yarn at 24 1-2 cts. a pound. But as delivered to the addressee the words "at 24 1-2 cents" were omitted. Upon receiving this altered telegram the Spinning Company assumed an acceptance of their inquiry or offer to sell the yarn at 24 cts. and proceeded to dispose of it at that price. When notified of the mistake the plaintiff at once refused to ship the yarn at 24 cts., but finally did so. It was held by the court that the Telegraph Company was liable to the plaintiff as a common carrier is liable to either sender or addressee

for any damage occurring by the company's negligence, but the reasoning of the opinion is brief and unsatisfactory, and the question whether the loss suffered was the result of the error in transmission of the telegram or plaintiff's own voluntary act does not seem to have been considered; and, after all, it merely held that a telegraph company is an independent principal, liable in tort to either party for the direct and proximate result of its negligence if its breach of duty resulted directly or indirectly in injury to the sender.

The case of W. U. Tel. Co. v. Shotter, 71 Ga., 760, also relied on by appellant, falls short of sustaining his contention. While the language of the opinion, considered apart from the facts, apparently justifies its citation by the brief of counsel, it does not really do so, because it appears from the facts stated therein, that the supposed offer by the sender of the telegram had, in fact, been accepted by the addressee and the merchandise actually shipped by the sender of the message before the mistake was discovered. It will also be found from an examination of the opinions in Postal Tel. Co. v. Schaeffer, 110 Ky. 907; and Fisher v. W. U. Tel. Co., 119 Ky., 885, cited by appellant's counsel, that they likewise fail to support his view of the law attempted to be applied to this case. In the Schaeffer case a telegram was sent by the appellee to brokers in Cleveland offering potatoes at $1.70 a barrel. The addressee replied, ''Telegram received, ship two cars your price.'' On receipt of this telegram appellee shipped two carloads of potatoes to the addressee at Cleveland and mailed invoice and draft with bill-lading attached. The discovery was then made that appellee's message, which had been written $1.70 per barrel, had been erroneously delivered to the addressee reading $1.07 per barrel. Following the discovery of the mistake the addressee refused to take the potatoes at $1.70 and the appellee refused to take $1.07 for them. Upon the arrival of the potatoes in Cleveland the addressee sued Schaeffer for the difference between the price of $1.07, claimed by them, and the market value of the potatoes, and attached the potatoes in the hands of the railroad. The telegraph company, though informed of the situation, refused to enter into the controversy. The appellee made defense in the suit in Cleveland. In the meantime the potatoes, which remained in the freight car, were spoiling, and by reason thereof the railroad

company sold them for the freight and held the balance of the price obtained pending the termination of the Cleveland suit.  Appellee, having lost that suit, brought an action against the telegraph company for the value of the potatoes, plus the cost of the Cleveland suit, less the sale price of the potatoes at Cleveland with freight deducted.  On the appeal we held that, while there was no contract made between the sender and the addressee of the message erroneously transmitted, and the former was not bound by the terms of the message as delivered, he was entitled to recover from the telegraph company any damages incurred as the direct and proximate result of its negligence; the measure of recovery being the difference between the market value of the potatoes at Louisville when shipped and at Cleveland when the mistake was discovered.  It will be observed, however, that the mistake was discovered while the potatoes were in transit and before any delivery had been made to the consignee, so the telegraph company was never relieved of liability for its mistake in transmitting the message by any act upon the part of the sender condoning the mistake, and after all, the principal question decided in the case was that where a telegraph company negligently delivers a different message from that it was authorized to deliver, so that the sender was represented as offering goods at a lower price than that at which he had, in fact, offered them, and the supposed offer was accepted in ignorance of the mistake, there was no contract and the sender was not bound to deliver the goods at the lower price at which the addressee of the message mistakenly supposed he was to get them, and the latter was not bound to accept the goods at the higher price at which the message, as delivered to the telegraph company, proposed to sell them, therefore the sender had the right to look to the telegraph company for the loss sustained as it resulted solely from its negligence.

In Fisher v. W. U. Tel. Co., the facts were that the plaintiff's offer to sell lumber at $35.00 per thousand was negligently transmitted by the telegraph company so as to read $25.00 per thousand and was accepted and the lumber furnished by the seller without knowledge of the mistake in the transmission of the message.  The company also received the lumber without knowledge of the mistake in the message and, believing that they were to get it at $25.00 per thousand.  As the sender was

able to collect of the latter only that price for the lumber, it was held that he had the right to recover of the telegraph company the loss resulting to him from its mistake, which was the difference between the price its negligence compelled him to receive for the lumber and its fair market value at the place of delivery.

It will readily be seen wherein the facts of the instant case differ from those of the two cases last cited. Here the loss was sustained by the appellant, not because of the mistake made by appellee in transmitting and delivering his telegram to the addressee, but because of appellant's gratuitous act in seeing fit, after his discovery of the mistake, to assume the responsibility of the addressee's action; and, applying the rule announced in the Schaeffer and Fisher cases to the facts of the instant case, it is evident that appellant was not bound to take the 45,000 bushels of oats mistakenly bought for him by Henning, Chambers & Co., or any excess of the 5,000 bushels actually ordered by him, and if he had repudiated instead of ratifying his brokers' purchase of the excess it would have saved him from loss and enable the latter to recover of appellee whatever loss they may have sustained upon the $45,000 bushels of oats they were induced to purchase through its erroneous transmission of the telegram delivered to it by appellant.

Of the several cases cited by appellee in support of its contention as to its non-liability in this case, that of Shingleur & Co. v. W. U. Tel. Co., 72 Miss., 1030 (30 L. R. A. 444), seems to be directly in point. In that case the plaintiffs, by a telegram to their agents, authorized a sale of cotton at 8½ cents a pound. As transmitted and delivered by the telegraph company it erroneously authorized the sale of the cotton at 8 5-16 cents a pound and the addressee entered into a contract of sale with third parties at that price. After notice of the mistake in the telegram, as received by the addressee, the plaintiffs' considering themselves bound by the message, delivered the cotton to the addressee at the lower price. It was held by the court that the plaintiffs were not required to deliver to the addressee under the erroneous message the cotton to be sold, and that their voluntary act in so doing and not the negligence of the telegraph company in erroneously transmitting the telegram, was the proximate cause of the loss sustained by them in the sale of the cotton. In the opinion it is said:

"But whether looked at in the light of contract or of tort, plaintiff's case comes inevitably to this: That plaintiff at a time when he knew fully of the mistake in the telegram, and when he could have delivered or refused to deliver the cotton, and when the minds of the plaintiff and of Appleton, Dixon & Co. (addressee) never having met and there being as to this sale no contract made between them, plaintiff was, therefore, under no legal liability to deliver the cotton; nevertheless, acting on the sentiment that he would himself protect his agent (already fully protected by the liability in tort of the company to such agent) and maintain his business credit, it delivered the cotton anyhow, and having done so, now seeks to hold the company. * * * Here appellant had shipped no goods, had incurred no legal liability, had merely to refuse to comply with the terms of a contract he had never made and remit Appleton, Dixon & Co., to their adequate remedy against the company. His payment was voluntary and gratuitous and cannot on any sound or just principle create for him a cause of action where none existed prior to such voluntary payment."

To the same effect is the case of Harrison & Co. v. W. U. Tel. Co., decided by the Texas Court of Appeals, reported in 10 Am. & Eng. L., Corp. Cases, 600. In that case a telegram by which the plaintiff ordered the purchase of cotton was erroneously changed in its transmission to *sell*. A settlement was made between the plaintiff and addressee upon the terms of the erroneous message and the former sued the telegraph company for the resulting loss. In holding that the telegraph company was not liable the court in part said:

"The mistake which occasioned the loss, if any was sustained by Latham, Alexander & Co., (addressee) was a mistake of the telegraph company and not of the plaintiffs, and plaintiffs were not bound to pay or make good said loss to Latham, Alexander & Co.; and if they made such payment, were not liable or responsible therefor; they could not have held the company liable over to them for repayment."

Perhaps the latest decision of this question to which our attention has been called is that of W. U. Tel. Co v. Peter & Neylon, decided by the Texas Court of Civil Appeals, November 26, 1913, and reported in 160 S. W. 991, from which it appears that in a telegram sent by plaintiffs to their brokers the latter were instructed to

sell cotton futures for their account. In its transmission the telegram was so changed by the telegraph company as to direct the brokers to buy instead of sell. Immediately following the receipt of the telegram the addressee purchased cotton for the senders' account. The plaintiffs, with knowledge of the mistake made in the transmission of the telegram, accepted the purchase and resold it at a loss. It then sued the telegraph company for its loss, but the court said in reversing the judgment of the lower court:

"It appears that if appellees when first apprised of this purchase had repudiated it, no loss would have resulted. * * * Notwithstanding the appellant in the present case was negligent on account of its mistake in transmitting the message, yet we think that if plaintiffs knew of such fact, or were charged with notice thereof and could have prevented the loss by resorting to available means within their power and failed to do so, and such failure proximately contributed to such loss, they would be guilty of contributory negligence and could not recover."

As appellant could not have been held to the terms of the telegram to his brokers as erroneously transmitted and delivered to them by appellee, and he would have suffered no loss on the purchase and sale of the oats but for his own act in accepting, after discovering the mistake, the brokers' purchase of the oats in excess of the quantity actually ordered by him, it necessarily follows that the negligence of the appellee complained of was not the proximate cause of the damages he sustained; and as this was the conclusion reached by the circuit court, the judgment is affirmed.