## WESTERN UNION TEL. CO. v. WHEELER.

No. 15533—Opinion Filed March 23, 1926.

(Syllabus.)

1. Contracts—Negotiation by Telegraph—When Acceptance Effective.

Contracts may be negotiated by telegraph, and when an offer is made by telegraph, an acceptance thereof in the same manner takes effect when the telegram containing the acceptance is deposited for transmission in

the telegraph office, and not when it is received by the other party.

**2. Telegraphs and Telephones—Failure to Deliver Telegram Accepting Offer to Buy Cotton—Nonliability of Telegraph Company to Seller.**

Where A. C. & Company telegraphed W. offering a specified price for cotton, and W. accepted such offer by telegraph and shipped the cotton, and drew a draft on A. C. & Company for the price thereof, which draft was paid, and afterward it was discovered that W.'s telegram of acceptance was not delivered, and A. C. & Company sold said cotton for less than the price paid, and W. voluntarily reimbursed A. C. & Company for the difference between the price paid him and the price at which the cotton was sold, W. cannot recover from the telegraph company the amount he repaid A. C. & Company, as it was his voluntary act in making such payment and not the failure to deliver his telegram which was the proximate cause of his injury.

Error from District Court, Sequoyah County; J. T. Parks, Judge.

Action by J. Perry Wheeler against the Western Union Telegraph Company. Judgment for plaintiff, and defendant brings error. Reversed, and remanded, with directions.

Francis R. Stark, Joseph L. Egan, Keaton, Wells & Johnston, and Ramsey, deMeules & Martin, for plaintiff in error.

NICHOLSON, C. J. During the months of September and October, 1920, and prior and subsequent thereto, J. Perry Wheeler was the lessee of a round bale cotton gin at Sallisaw, belonging to Anderson, Clayton & Company, and by the terms of a contract between them Anderson, Clayton & Company agreed to purchase all round bale cotton ginned by him, and to quote the price by telegraph from day to day that they were willing to pay for the same. If Wheeler elected to sell at the price quoted, he was to telegraph Anderson, Clayton & Company, before 8 o'clock p. m. of the day of sale, the number of bales sold and ship the cotton to their warehouse at Houston, Tex., and draw a sight draft on them for the purchase price thereof.

In accordance with this contract, Anderson, Clayton & Company, on September 13, 1920, sent Wheeler a telegram over the lines of the Western Union Telegraph Company offering him 29½ cents per pound for cotton that day, to which he replied by Western Union telegram, before 8 o'clock p. m. of that day, accepting the offer and advising Anderson, Clayton & Company that he was selling them 50 bales that day, and accordingly shipped said cotton to them at Houston, Tex., and drew a draft on them for the purchase price as quoted in their wire of that day, which draft was paid by them.

On October 6, 1920, Anderson, Clayton & Company sent Wheeler a Western Union telegram, offering him 22¼ cents per pound for cotton that day, to which plaintiff replied by Western Union telegram, delivered to the telegraph company before 8 o'clock p. m., accepting the offer and advising Anderson, Clayton & Company that he was selling them 100 bales that day, and shipped said cotton to Anderson, Clayton & Company at Houston, Tex., and drew a draft on them for the purchase price thereof, which draft was paid by them.

Neither of Wheeler's telegrams was delivered to Anderson, Clayton & Company. Thereafter, the market price of cotton declined, and upon the discovery that said telegrams had not been delivered to Anderson, Clayton & Company, a controversy arose between them and Wheeler as to whom the 150 bales of cotton belonged, which controversy ended on October 29, 1920, by Wheeler voluntarily agreeing to accept payment for the cotton at the market price that day, which was 20.40 cents per pound.

Anderson, Clayton & Company drew a draft on Wheeler for the amount of the difference between the prices quoted on September 13th, and October 6th, and the market price on October 29th, which draft was paid by him, whereupon Wheeler brought this action against the Western Union Telegraph Company to recover the sum of $1,587, the loss sustained by him, and from a judgment in his favor the company has appealed.

It will be observed that all negotiations and communications between Wheeler and Anderson, Clayton & Company pertaining to the purchase and sale of the cotton were conducted by telegraph. Anderson, Clayton & Company proposed to pay Wheeler a definite amount for the cotton, and he accepted their offer unconditionally. By section 5006, Comp. Stat. 1921, it is provided:

"If a proposal prescribes any conditions concerning the communication of its acceptance, the proposer is not bound unless they are conformed to; but in other cases any reasonable and usual mode may be adopted."

And section 5007, Id., provides:

"Consent is deemed to be fully communicated between the parties as soon as the party accepting a proposal has put his acceptance in the course of transmission to the proposer, in conformity to the last section."

It is well settled by the authorities that

contracts may be negotiated by telegraph, and that when an offer is made by telegraph an acceptance thereof in the same manner takes effect when the telegram containing the acceptance is deposited for transmission in the telegraph office, and not when it is received by the other party. Beach on the Modern Law of Contracts, sec. 63; Minnesota Linseed Oil Co. v. Collier White Lead Co., Fed. Cas. 9635; North Atchison Bank v. Garretson et al., 51 Fed. 168; Schreiber v. Anderson et al., 101 Fed. 763; Stephen M. Weld & Co. v. Victory Mfg. Co., 205 Fed. 770; Trevor v. Wood, 36 N. Y. 307, 93 Am. Dec. 511; Kenedy Mer. Co. v. Western Union Telegraph Co. (Tex. Civ. App.) 167 S. W. 1094; Western Union Telegraph Co. v. Fletcher (Tex. Civ. App.) 208 S. W. 748; see, also, Farmers Produce Co. v. McAlester Storage & Com. Co., 48 Okla. 488, 150 Pac. 483.

Therefore, as soon as Wheeler delivered to the telegraph company for transmission his telegram accepting the offer for his cotton, the contract of sale was complete. He thereby became bound to sell, and the company bound to buy at the price mentioned. It was immaterial to him whether his telegram was delivered to the company or not. The company had selected its agency for the receipt, transmission, and delivery of his acceptance, and having delivered his acceptance to that agency, he did all that was required of him. Furthermore, this contract was fully performed by the parties, in that Wheeler shipped the cotton to Anderson, Clayton & Company, and they accepted the same and paid therefor. The fact that Wheeler afterwards voluntarily relinquished his rights under the contract and reimbursed Anderson, Clayton & Company for their loss, if any, on the cotton, does not give rise to a cause of action against the telegraph company, as it was his voluntary act in paying Anderson, Clayton & Company, and not the failure to deliver his telegram, which was the proximate cause of his injury. McKee v. Western Union Telegraph Co., 158 Ky. 143. 164 S. W. 348, 51 L. R. A. (N. S.) 439; Shingleur & Co. et al. v. Western Union Telegraph Co., 72 Miss. 1030, 30 L. R. A. 444; Mount Gilead Cotton Oil Co. v. Western Union Telegraph Co. (N. C.) 89 S. E. 21; Western Union Telegraph Co. v. Southwick (Tex. Civ. App.) 214 S. W. 987.

The judgment is reversed, and the cause remanded, with directions to render judgment in favor of the plaintiff in error.

All the Justices concur, except HARRISON and CLARK, JJ., absent and not participating.

Note.—See under (1) 13 C. J. p. 298 § 114; pp. 300, 301 § 116; 6 L. R. A. (N. S.) 1016; 6 R. C. L. pp. 614-616; 4 R. C. L. Supp. p. 429. (2) 37 Cyc. pp. 1754, 1757.