DICK v. VOGT et al.

No. 31637. June 26, 1945.

Rehearing Denied Sept. 18, 1945.

Application for Leave to File Second Petition for Rehearing Denied Oct. 23, 1945.

*162 P. 2d 325.*

Meacham, Meacham & Meacham, of Clinton, for plaintiff in error.

Jones & Wesner, of Cordell, for defendants in error.

ARNOLD, J. This is an action in

ejectment for possession of the following described lands: S.½ of the S.W.¼ of Section 14, Township 10 North, Range 17 West I. M., Washita County, Oklahoma.

Plaintiff, E. E. Vogt, commenced action October 24, 1942, by filing his petition in the district court of Washita county alleging that he was the owner of the legal and equitable title to certain described land and that he acquired his title by warranty deed from the former owner, Cecil D. Bingenheimer, and his wife, which said deed was dated August 31, 1942, and recorded in the deed records of Washita county on the 14th day of September, 1942; that the defendant, Arthur Dick, was wrongfully in possession of said premises, and plaintiff prayed for possession thereof.

Defendant, Arthur Dick, waived issuance and service of summons and entered his general appearance in the action. Demurrer to the petition was filed, but the record discloses no action thereon; thereafter he filed answer alleging in substance that by reason of certain letters and telegrams passing between him and Bingenheimer, a contract of sale and purchase was entered into; that he is the owner of said real estate and entitled to the possession thereof. Plaintiff replied by general denial.

Thereafter, by order of court, the Farmers National Bank of Cordell was made a party defendant in the action, and defendant Dick filed an amended answer in which it was alleged that said Farmers National Bank at the time of taking the mortgage executed to it by Vogt had actual and constructive notice of defendant's ownership of said property, and prayed that the mortgage of said bank covering the lands involved, which was executed to the bank by Vogt, be canceled and held for naught, and tendered into court the full purchase price for the benefit of those entitled to it.

At the request of the defendant the trial court made findings of fact and conclusions of law. The first paragraph of the court's findings states the issues to be determined in the action in this language:

"The contention of the defendant in this case is that he is the equitable owner of the land in controversy by virtue of a valid contract of purchase as evidenced by a series of letters and telegrams passed between himself and the original owner, Cecil D. Bingenheimer, of which the plaintiff had notice, and asks that the plaintiff's pretended deed be set aside and title vested in him. This seems to be the only issue in the case. If the defendant's contention is correct, he is entitled to a judgment accordingly; otherwise, judgment should be for plaintiff."

The evidence in the case consisted of a series of letters from Bingenheimer to Vogt and a series of letters and telegrams between Bingenheimer and Dick and letters from Bingenheimer to Ralph Smith, an attorney at Cordell, and the oral testimony of witnesses.

It appears from the record that Bingenheimer, who lived in California and wanted to buy a home there, was anxious to dispose of this 80 acres of land in Washita county and he had made repeated offers to Vogt by letters, none of which were acted upon by Vogt but which were either not answered by him or, if answered, disclosed some counterproposition on his part. This correspondence between these two, as disclosed by the record, began in August, 1941, and culminated on the 31st day of August, 1942, in the execution of a deed to the land to Vogt under circumstances hereinafter to be detailed.

The correspondence and telegrams passing between Bingenheimer and Dick apparently began about the 1st of August, 1942, for on the 11th of that month Bingenheimer wrote to Dick the following letter:

"August 11, 1942,
"Oakland, California.

"Dear Mr. Dick:

"Received your letter some time ago but failed to ans. as Mr. Vogt said he thought he would buy the farm from me

and have been waiting for him to write. He hasn't said yet. I want $1500.00 cash for the place and the buyer to take over the loan which is $1500.00. I have paid on this years instalment and pay the taxes for this year. If you are interested let me know. If not sold I want $175.00 rental for one year.

"Yours truly,
"Cecil D. Bingenheimer."

By the sentence in this letter, "If you are interested let me know," Bingenheimer was evidently seeking an acceptance of his offer or a counteroffer from Dick. He had evidently come to the conclusion that Vogt was not going to buy the land because he had been for a year or more endeavoring to sell to Vogt without any sucecss. On August 17, 1942, Dick sent the following telegram to Bingenheimer:

"I ACCEPT YOUR OFFER TO SELL FARM AT FIFTEEN HUNDRED ABOVE LOAN WIRE YOUR ACCEPTANCE AT ONCE WILL SEND DEED FOR YOU TO SIGN AS SOON AS GET YOUR WIRE"

This telegram was answered by Bingenheimer on August 19th by wire as follows:

"DEAL OKAY, RALPH SMITH WILL HANDLE."

That Bingenheimer considered his letter an outright offer accepted by Dick by telegram and that the letter and telegram constituted a contract between him and Dick is shown by the opening sentence in his letter to Ralph Smith at Cordell under date of August 18, 1942, said language being:

"I am selling my 80 acres to Arthur Dick and would like for you to handle the transaction for me."

This opening sentence of his letter to Smith was followed by a statement of the purchase price to be paid by Dick, being $1,500 cash and Dick to assume the loan of $1,500 then on the property. The telegram from Bingenheimer to Dick is strongly indicative of this attitude on the part of Bingenheimer.

Under date of August 13, 1942, Bingenheimer had written to Vogt in answer to a new counterproposition evidently submitted to him by Vogt and in this letter Bingenheimer stated:

"I think we can make a deal. I will carry your note for $500.00 if you want it that way. I figured it would be better and easier for you if you took over the loan and paid me $1500.00 cash."

Note that the acceptance telegram of Dick and the telegram of Bingenheimer to Dick were sent on a subsequent date to the foregoing letter of Bingenheimer to Vogt. This letter was received by Vogt on August 17th and he apparently went by the property in question for the purpose of seeing Dick, but as Dick was not at home and Vogt found Dick's employee plowing the land, he went in and ordered him to stop work. Later in the day he saw Dick in town and told Dick that he had stopped the plowing as he had bought the land. Dick then advised Vogt that he had already purchased the land by contract with Bingenheimer.

The record discloses that thereupon Vogt went to the office of Ralph Smith with the letter from Bingenheimer of August 13th. Smith, testifying with reference to this visit, said on cross-examination that "Mr. Vogt came in there and told me what he had done and showed me a letter and told me he accepted Mr. Bingenheimer's proposition, and that the acceptance had already gone in. And then he told me what he told Mr. Dick. And I said, 'All right then, I will submit your proposition to Mr. Bingenheimer.'" The record further discloses that this proposition of Mr. Vogt's, which Smith submitted to Bingenheimer, was an offer of $1,600 cash and an assumption of the mortgage indebtedness, being an increase of $100 over the price asked by Bingenheimer in his various letters to Vogt. The vital bit of evidence showing communication of Vogt's purported acceptance of Bingenheimer's proposition was not offered in evidence. Smith then testified that he prepared a deed from Bingenheimer to Vogt and mailed it to Bingenheimer

for execution and that the next day he saw Dick and asked Dick what he was going to do and Dick said he was not going to do anything more than his telegram to Bingenheimer indicated.

The inference from this testimony of Vogt and Smith is very strong that Vogt learned in his conversation with Dick of the latter's contract to purchase the land and that his proposition to Bingenheimer to increase the purchase price by $100 was the result of this information which he received from Dick. This counterproposition which he authorized Smith to submit was in no sense an acceptance of any proposition theretofore made to him by Bingenheimer. The increased price offered was doubtless for the purpose of influencing Bingenheimer in his favor at the last moment, and it apparently had this result.

In his letter to Mr. Vogt of July 7, 1942, Bingenheimer had proposed to pay the loan installment of $75 due the 1st of August that year and to bear all expenses of the deal. In his letter of July 20, 1942, Bingenheimer told Vogt he would pay the loan installment due August 1st, bring the taxes up to date and pay the costs of the transaction. Notwithstanding these explicit statements from Bingenheimer in these prior letters, Mr. Vogt and Mr. Smith tried to make it appear that the $100 increase in price which Vogt paid for the land was to cover this installment and the taxes and costs of closing the deal. Following his letter of August 18th to Ralph Smith, Bingenheimer sent to Smith the deed which Dick had got Mr. Fleming at Cordell to prepare and forward to Bingenheimer, and on the bottom of Fleming's letter forwarding the deed Bingenheimer wrote to Smith as follows: "Ralph, here is deed and letter received from Fleming. Look it over and if satisfied please handle. Send bill when finished." This language is practically a restatement of his language to Smith in the letter of August 18th when he stated he was selling the land to Dick and would like for Smith to handle the transaction. This was certainly not an authorization to Smith to submit a higher proposition from someone else for the land, but a direction to him to close the deal which Bingenheimer had already made by wire with Dick. If the deed submitted by Fleming lacked language which Smith considered necessary to insure the assumption of the mortgage indebtedness by Dick, he had authority under both communications from Bingenheimer to insert the necessary language therein before delivery to Dick. Nowhere in Smith's testimony does he claim that he ever submitted to Dick a deed which he considered sufficient to protect Bingenheimer against the mortgage indebtedness nor that the tender of such a deed was ever refused by Dick. The latter was the buyer and it was Smith's duty as agent of the seller to tender a proper form of deed under his express authority to "handle the transaction." Instead of handling the transaction with Dick for Bingenheimer he handled the transaction with Bingenheimer for Vogt.

Before proceeding to a consideration of the special findings made by the trial court it is well to have in mind certain statutory provisions relating to transactions of the character here disclosed and their application by this court to fact situations similar to this one. 15 O. S. 1941 § 68 provides:

"If a proposal prescribes any conditions concerning the communication of its acceptance, the proposer is not bound unless they are conformed to; but in other cases any reasonable and usual mode may be adopted."

Section 69 of the same title provides:

"Consent is deemed to be fully communicated between the parties as soon as the party accepting a proposal has put his acceptance in the course of transmission to the proposer, in conformity to the last section."

This court, in applying the above-quoted statutory provisions to a fact situation similar to the one in the instant case, in the case of Western Union Telegraph Co. v. Wheeler, 114 Okla. 161, 245 P. 39, said in the first paragraph of the syllabus:

"Contracts may be negotiated by telegraph, and, when an offer is made by telegraph, an acceptance thereof in the same manner takes effect when the telegram containing the acceptance is deposited for transmission in the telegraph office, and not when it is received by the other party."

The special findings of the trial court in the instant case are in narrative form but contain four definite findings material to the facts which will be considered in the order in which they appear.

The first of these findings reads:

"In the telegram the defendant did not agree to assume the loan, but referring to Bingenheimer's letter of the 11th as it did, and purporting to be an acceptance of the terms of sale as contained in such letter. Binkenheimer could have presumed, and according to his letter to his attorney Smith, on the 18th of August, did presume that defendant would assume the mortgage."

We think this finding of fact by the trial court is justified by the evidence disclosed in the record and is a reasonable conclusion as to Bingenheimer's interpretation of Dick's telegram to him offering $1,500 above the loan. Not only is this true as to Bingenheimer's interpretation of the telegram, but we think the record discloses that such was Dick's intention by his telegram. It is disclosed by the record that Dick made arrangements at his bank for money to take up the loan secured by the mortgage and advised Fleming, the agent of the loan company, that such was his intention. It is further disclosed by the record that Dick got his banker, Frank Kliewer, to go with him to Smith's office and Smith was there and then advised that Dick was ready to pay off the mortgage and to pay the purchase price of $1,500 for the land. This visit of Dick and his banker to Smith's office is denied by Smith, but the circumstances surrounding the transaction between Smith and Vogt, preceding this visit of the banker and Dick to his office, renders their testimony upon this matter more credible. Dick had also had his bank wire Bing-

enheimer after the receipt of Bingenheimer's acceptance telegram that the money was ready at the bank. All of these facts and circumstances disclosed by the record, we think, conclusively show that it was Dick's intention to pay off the loan in addition to the $1,500 net purchase price to Bingenheimer.

The second material special finding of the trial court is in this language:

"We believe it is clear that Bingenheimer, in his telegram of August 19th, made his acceptance conditioned on the approval of his attorney. The failure of the defendant to secure such approval, or to attempt in good faith to secure it, was, in the absence of any fraud in preventing him from doing so, a termination of the negotiations, and prevented a valid contract of purchase from ever being consummated."

We think this special finding by the court is erroneous in two respects and is not sustained by the evidence in the case. First, we think there was nothing in Bingenheimer's explanation in his telegram: "Ralph Smith will handle," which indicated an intention that his sale of the property to Dick should be conditioned on Smith's approval of his contract of sale and purchase. The words "Ralph Smith will handle" evidently referred to the delivery of the deed in such form as would accomplish the intention of Bingenheimer and the collection of the money and not to any discretion vested in the attorney as to whether or not Bingenheimer should sell the land to Dick. Second, the failure of Dick to secure the approval of Ralph Smith of his contract with Bingenheimer was not due to any lack of effort on the part of Dick to carry out the terms of his contract with Bingenheimer, but was due solely, under the facts disclosed by the record, to the transaction between Smith and Vogt on the 17th or 18th of August in Smith's office after Vogt had learned, probably through his conversation with Dick, that the latter had bought the land from Bingenheimer. We think the contract of sale and purchase was fully concluded by Bingenheimer's telegram of acceptance and

that the detail of delivery of the deed and payment of the purchase price were merely acts to be performed by Smith and Dick in carrying out the terms of that contract.

The trial court's third special finding reads:

"For some reason unexplained in the evidence the defendant did not try to complete the deal with the attorney, and the attorney, several days after receiving the instructions from his client Bingenheimer to complete the deal, saw the defendant at the courthouse or on the street at Cordell and attempted to talk to the defendant about closing the deal. According to both his own and the defendant's testimony, the defendant assumed a somewhat hostile attitude and showed no inclination to have any dealings with the attorney in any attempt to close the transaction."

We think this finding by the trial court is not sustained by any evidence in the case, but on the contrary the evidence preponderates against the correctness of this finding. Smith in his office refused, upon request of Dick and the banker to deliver a deed to Dick as he was authorized by Bingenheimer to do, for the expressed reason that there was no agreement by Dick to assume the mortgage when as a matter of fact Dick was able to and intended to pay off the mortgage and arrangements had been made to do this. It is small wonder under the facts disclosed that Dick assumed the attitude which he did when approached by Smith with reference to the matter at the courthouse.

The trial court's fourth special finding reads:

"The court finds that even had the letters and telegrams been sufficient in themselves to have established a valid contract of sale between the defendant and Bingenheimer prior to the date of plaintiff's purchase of the place, still from the evidence there was no notice of such contract to the plaintiff as would have invalidated his deed to the premises."

This finding is, in our opinion, erroneous and entirely overlooks and fails to consider the transaction between Smith and Vogt heretofore referred to which resulted in the increased purchase price offered by Vogt and the forwarding of a deed to the land to him for signature of Bingenheimer prior to any communication by Smith with his principal, Bingenheimer, regarding the performance of his duties as agent in the principal's dealing with Dick. We think that Vogt's effort to stop Dick from plowing the land and his immediate visit to the office of Smith, with the results heretofore shown, indicate conclusively that Vogt did have notice before he went to Smith's office of the contract between Dick and Bingenheimer.

Peculiarly applicable to the facts disclosed by the record in this case is the first paragraph of the syllabus to the case of Schoene v. Hicks et al., 162 Okla. 294, 23 P. 2d 170:

"In determining the question of the existence of a contract. the court will consider the acts, conduct and statements of the parties as a whole, and if it appears that there was a meeting of minds on all of the essential elements of the contract, and an intention on the part of both parties to enter into a contract upon clear and unequivocal terms, and one of the parties in good faith has acted in reliance upon the alleged contract, the court should construe the facts to constitute a contract rather than to defeat one."

We think the special finding of the trial court did the very thing in this case which the last clause in the above-quoted syllabus shows should not be done.

Even if the word "assume" or "assumption" was not contained in the communications between Bingenheimer and Dick with reference to the loan on the land secured by the mortgage, it is evident that each intended the other to understand that the loan was a part of the consideration in the contract. This construction should be given to the language used by these parties under the established rule in this jurisdiction reflected by the syllabus to the case of

Johnson v. Davis, 146 Okla. 170, 293 P. 197:

"Where a mortgage debt forms a part of the consideration for the purchase of land, the purchaser is bound to indemnify the mortgagor upon his payment of the debt, though the purchaser has not expressly contracted to pay it, for equity implies to him a contract of indemnity in favor of his grantor to the extent of the mortgage debt, and he is liable to the grantor upon his being compelled to pay it."

In view of the foregoing findings and conclusions the trial court held that it was unnecessary to consider and pass upon the question of the statute of frauds. A valid and enforceable contract for conveyance of real estate may be made by letters and telegrams signed by the parties to the contract. Bowling v. Viets, 176 Okla. 107, 54 P. 2d 653.

A contract for the sale of real estate involved herein having been completed by the letters and telegrams of the parties to be charged, the transaction was not inhibited by the statute of frauds.

When the contract between Bingenheimer and Dick was completed equitable title vested in Dick, and he thereafter possessed the land as equitable owner, and the bank in taking its mortgage thereafter took it with notice of his rights. Vogt had no title, legal or equitable, before Dick's deal was closed. His claimed title was therefore taken with notice of the claim of ownership by Dick, who was then in possession as equitable owner.

The cause is reversed, with directions to the trial court to adjust the equities between the parties hereto, and to require the conveyance of said lands from Vogt to Dick upon compliance by Dick with the terms of his agreement with Bingenheimer.

All Justices concur.