## Simon Brothers v. Glenmore Distilleries Company.

(Decided March 24, 1916.)

### Appeal from Jefferson Circuit Court
### (Chancery Branch, No. 2).

1. **Damages—Measure of—Breach of Contract.**—The general rule as to the measure of damages for a breach of contract to sell and

deliver personal property, is the difference between the price to be paid and the market value of the same property at the time and place of delivery.

2.  Damages—Measure of—Breach of Contract.—If, however, the property was purchased wit.. the intention of re-selling at the time of the contract and at the time for the performance the property could not be obtained from any other source, the purchaser would be entitled to recover as damages upon a breach of the contract, the profits, if any, which he could have made if the contract had been performed.

KEITH L. BULLITT and TYLER BARNETT for appellant.

GIBSON & CRAWFORD for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This suit was brought on a written contract of date January 16, 1904, between Simon Brothers, a firm composed of appellant and his brother, whom he has since bought out, and Glenmore Distilleries Company, whereby the firm of Simon Brothers purchased from appellee 332 barrels of "Doherty Short Horn" whiskey made in the months of June and July, 1903, and also 300 barrels of the same brand of whiskey to be made in the months of April and May, 1904. Another stipulation in the contract is to the effect that appellants should have the right to require appellee to distill for them as much of the said whiskey as might be ordered, starting with the year 1905, provided that they would give appellee written notice of the quantity required as well as the time for its distilling, on or before the 15th day of January in each year, not to exceed the period of five years. There are other stipulations in the contract, which so far as necessary will be noticed in the progress of this opinion.

The suit was filed on April 10, 1911, by appellant claiming that appellee had failed to comply with the contract in many respects and that he had sustained damages in the sum of $22,250.00, for which he prayed judgment. The answer is a traverse of the petition. The case was tried in equity, and after hearing, the chancellor rendered a judgment in favor of the plaintiff for the nominal sum of $25.00. To correct what are insisted upon as errors, the case is brought here for review. The items composing the full damages sued for are as follows: Loss of profits on 5,000 barrels of Glenmore whiskey, $5,000.00; failure to store the 632 barrels of whiskey purchased in heated

warehouses, $500.00; failure to ship promptly the 632 barrels of whiskey purchased, $500.00; failure to deliver 400 barrels of whiskey ordered in the year 1907, $10,000.00, and failure to deliver 250 barrels of whiskey ordered in the year 1909, $6,250.00. The price to be paid for the whiskey which might be ordered under the option to do so for the five years succeeding 1905, was to be nineteen cents per original proof gallon, provided the corn on the Chicago market should be at the time of distilling the whiskey forty-two and a half cents per bushel, but should corn increase or decrease upon such market when the whiskey should be distilled, the price to be paid should be increased or decreased accordingly.

It was a part of the contract that appellee at the request of appellant would issue receipts for the 632 barrels of whiskey purchased which should be "regular Glenmore warehouse receipts," and it is claimed that although receipts were issued in this way, they were furthermore marked by a printing on the face of them to this effect: "Distilled as Doherty Short Horn Distillery." And it is insisted that this was not only a violation of the contract, but that appellant was deprived of selling this whiskey as Glenmore whiskey and deprived of building up a market for that brand of goods, and in this way he failed to sell through the demand which he hoped to create at least 5,000 barrels of whiskey upon which he would have made a profit of $1.00 per barrel. This constitutes the first item of damages mentioned.

Waiving the question as to whether the branding of this whiskey as Glenmore when it was not distilled as such would constitute a fraud upon the public and therefore would prevent the agreement from being an enforceable one, it is sufficient to say that the proof wholly fails to show any tangible testimony that such an amount of whiskey could have or would have been sold by appellant. The matter rests, so far as the testimony goes, entirely within the realm of speculation, and the damages claimed are thus made so remote as not to be entitled to legal recognition. Moreover, the proof satisfies us that the Glenmore brand of whiskey could have been obtained on the market during any of these years at prices quite as low as it was agreed to be paid by appellant, which if true, as we will hereafter see, would not entitle him to profits claimed in this item.

As to the failure to store the whiskey in heated warehouses, the proof is not conclusive that this was not done; but, however this may be, it is shown that this whiskey was sold mostly at retail at a profit equal to what it could have been sold had the contract been literally complied with.

The damages claimed for failure to promptly ship the whiskey is equally unjustifiable. The proof in regard to this is, that the shipments were made almost entirely by boat on the Ohio river from the distillery of appellee to the city of Louisville, the contract stipulating that this freight should not exceed forty cents per barrel, which was the rate charged by the river transportation. To have shipped the whiskey by railroad, the freight would have been something like sixty cents per barrel. These conditions existed at the time of the entering into the contract, and it may well be presumed that inasmuch as the river rate was mentioned in the contract, that this was in the minds of the parties at the time. Moreover, it is disclosed that in the greater number of instances, if not all of them, when complaint would be made, appellee agreed to and did make shipments by railroad but on condition that appellant would pay the additional freight. It is furthermore shown that shipment by river transportation was the usual and most general mode in use, and under all these circumstances we find no basis for allowing any damage on account of this item.

As to the failure to ship the 400 barrels of whiskey ordered in 1907 and the 250 barrels ordered in 1909, it may be said that by this act the appellee committed a breach of its contract, although there is some question raised in the case as to whether the option given by the contract to make these orders is enforceable as against appellee. Waiving this question, however, it is manifest from the proof that at the respective times when these orders were given, the same kind and brand of whiskey could have been purchased from different dealers therein. We have not overlooked, however, in this connection that appellant endeavors in a way to deny this fact. His testimony, however, fails to convince us, and the testimony of the president of appellee, together with some exhibits filed, shows that this same whiskey could have been readily obtained upon the market at any time during the life of the option contract.

The contract sued on is one for the sale of goods, wares and merchandise. When the seller fails to comply with his contract to deliver such commodities, the measure of damages which the purchaser may recover is the difference in the price agreed to be paid at the time and place of delivery and the market price of the same goods at that time and place. Miles v. Miller, 12 Bush, 134; Belcher v. Sallards, 19 Ky. Law Rep. 1571; Stahr v. Hickman Grain Co., 132 Ky. 496; Bucyries Hay & Grain Co. v. Cincinnati Grain Co., 119 S. W. 182.

The rule is fundamental and we deem it unnecessary to refer to other authorities. There are, however, some exceptions to it, one of which is, that the goods purchased were known by the seller to have been purchased with the intention of reselling, and they could not be obtained at the time and place agreed upon for delivery from any other source. The profits which might have been realized under such circumstances by the seller upon a fulfillment of the contract may be recovered. Such is the rule upheld by this court in the case of Bluegrass Cordage Co. v. Luthy, 98 Ky. 583, and others following it, which are relied upon by appellant.

This court in stating the rule in that case, said:

"While we do not find a case directly in point in Kentucky, yet we find authors of reputation and courts of other states supporting the view that, where the article purchased is withheld, and where it can not be purchased elsewhere, then, from the very necessity of the case, if any compensation at all is to be made, an estimate of damage may be based on expected profits where it was fairly within the contemplation of both parties that the goods were purchased with a view to a resale for profit."

And further on, in substantiation of the rule announced, the court says:

"The jury found that plaintiff could not, after due diligence, find the goods elsewhere."

The exception to the general rule as to the measure of damages upon breach of contracts such as we have here, as established by that case and others based upon similar facts, is a sound one and is in perfect accord with the principles of law; but, as we have seen, the facts in the instant case fail to bring it within that exception.

The proof shows that upon the dates that these respective orders were made, the same whiskey could have been obtained at practically the same price agreed to be

paid under the terms of the contract. The learned chancellor who tried the case filed a brief opinion which. so thoroughly accords with our views that we copy it as follows:

"Plaintiff's own testimony shows that he was not damaged or caused to suffer any loss whatever except a trifling loss growing out of the refusal of defendant to distill his orders for the years 1907 and 1909. He had an opportunity to secure the whiskey he desired for those years at a very small advance over the contract price (Exhibits A and B), and it was his duty to purchase the goods and to hold the defendant for the difference between the contract price and the price at which he was forced to buy. If he lost the opportunity to sell the whiskey at a profit, it was due to his own neglect to provide himself with the merchandise at the advanced price. He, however, has a right to judgment for the difference in the prices. Judgment for plaintiff in the sum of $25.00 and costs."

Failing to find, after a thorough reading of the record, any errors by which the substantial rights of the appellant have been prejudiced, the judgment is affirmed.