### KAYE v. EDDYSTONE AMMUNITION CORP.

(District Court, E. D. Pennsylvania. May 2, 1918.)

No. 4860.

SALES ☞418(9)—BREACH OF CONTRACT—PURCHASE FOR RESALE—DAMAGES.

Where the purchaser of a commodity bought to sell again, and had made a contract for resale at a profit, when the seller refused to make further delivery, in consequence of which the purchaser abandoned the resale, the measure of his damages for breach of the contract, there being no other element of damage, is the difference between the amount he would have paid and the amount he would have received for the undelivered goods.

At Law. Action by W. Kaye, to use of Rees & Maloy, against the Eddystone Ammunition Corporation. On motion by plaintiff for new trial. Granted, subject to condition.

John E. McDonough, of Chester, Pa., for plaintiff.
A. B. Geary, of Chester, Pa., for defendant.

DICKINSON, District Judge. The fact findings in this case were all in favor of the plaintiff. The propositions of law advanced by the plaintiff were all affirmed, except that the practical application of the principles of law to the facts of the case resulted in the trial judge finding a different measure of damage than that which the plaintiff asked to have applied. The case arose out of a contract made between the parties for the sale and delivery by the defendant to the plaintiff of 3,000 bags of what are known as screw blocks. These had been made for the defendant to be used in connection with shells made for the Russian government. They were of wood and had been soaked in paraffine. The blocks had been condemned, and because of this became with the defendant waste material. They had been put up in bags, and were sold to the plaintiff for 5 cents per bag, to be removed at once from the defendant's premises by the purchaser. In anticipation of their delivery the plaintiff sold them to a man by the name of Thorpe at an advance of 10 cents per bag. Thorpe took away some of the material, but, having encountered difficulties in securing the remainder of the bags, abandoned his purchase. Kaye then resold the undelivered

bags to Rees & Maloy, the use plaintiffs. After a number of the bags had been taken away the defendant, as found by the jury, refused to permit further deliveries. The present action was then brought for this breach of defendant's contract. The quantity involved was 1971 bags undelivered. Rees & Maloy, the use plaintiffs, were in the kindling wood business, and could have resold the blocks at an advance over the price paid for them.

The case for the plaintiff was presented as one founded upon the contract of the defendant to deliver and the arbitrary withholding of the 1,971 bags, in consequence of which the use plaintiffs were entitled to recover as their damages the price which they could have secured for the blocks, which, according to their testimony in chief, was $5,321.70, for which plaintiff asked for a verdict. The action being by Kaye, with whom the defendant had contracted, and being upon the contract, the amount which could be recovered was in consequence limited to such claim as Kaye could assert. The price at which plaintiff had sold the blocks to Rees & Maloy the trial judge understood to have been 15 cents per bag. Plaintiff asked the court to charge that as a general rule the measure of damages for goods contracted to be sold and undelivered was the difference in price at which the purchaser could supply himself in the market with other goods to take the place of what he had bought and the contract price at which he had bought them. The court so charged the jury, but added that when the purchaser had bought to sell again, and had sold what he had bought, when he received the difference between the price at which sold and the price at which he bought, his loss had been fully covered, and he was entitled to no more. Assuming the price at which he had sold to not have been in controversy, and to have been at an advance of 10 cents per bag, the court limited the sum which plaintiff was entitled to recover to 10 cents per bag.

We are still of the opinion that this instruction was in principle correct. The general subject is well discussed, and the accepted doctrine clearly stated, in Benjamin on Sales. There are often features which are not here present, and all others may be eliminated. The right of the purchaser holding an executory contract to resell in anticipation of the contract becoming executed is recognized. If he buys in order to resell, his rights are affected by the knowledge which his vendor has of the motive and purpose of his purchase. The present case belongs to that class, in which the original vendor is charged with the knowledge of a general purpose to resell, but without any knowledge of a particular contract to resell. In such a case, the original purchaser may do either of two things. On notice of default of his vendor, he may go into the market to purchase that which the vendor has failed to deliver, and, if there is no market supply, may secure the best substitute obtainable, recovering as his damages the difference between the market price and the contract price. He may abandon the subsale and recover for his loss of profits, with or without additional damage resulting from his contract of resale, according to the circumstances.

In this case there was no evidence of any loss or damage sustained by Kaye, other than his loss of profits; so that this feature may be

eliminated. We have, in consequence, the simple case of a man who buys to resell, and who has contracted to resell at a profit, who elects to abandon such resale, resulting in the loss to him of the profits on such resale, and sustaining no other damage. In such case, the limit of the measure of his damage is the profit which he has lost. It is true that, considered as an academic question, the original vendee might have sold at the market price, and his right to sell at less than the market price, or even to give away that which he had bought, would not inure to the benefit of his defaulting vendor. As a practical question, however, the difference between the price at which he had contracted to sell and the price at which he had bought does measure his damage, and the fact that he had contracted to sell at a price is not only evidence that this was the market price, but he has thereby fixed a limit to any possible practical damage or loss which he could sustain, and he is bound by the limit which he has thus voluntarily fixed.

Recurring to the point which the court affirmed, at plaintiff's request, a purchaser, in case of the vendor's refusal to deliver, would have the right to go into the market to supply himself at the market price; but, if he made a purchase at a more favorable rate, this would fix and make definite his damages, and the market price would then become unimportant. It would seem that the same principle would hold good in case of a resale, and that the price at which he resold would (there being no other element of damage) in like manner fix and make definite the amount of damage which he had sustained through the default of the first vendor.

It has developed, however, that the court was in error in assuming the second sale to have been at the price of 15 cents. It was in point of fact 20 cents. If the attention of the trial judge had been called to this error, the correction would, of course, have been made, and ordinarily a plaintiff would not thereafter be permitted to complain of an inadvertent statement, which he might have had corrected by a complaint made promptly.

It further appears, however, as a reason for plaintiff not having the correction made at the trial, that counsel supposed the court to have based its ruling upon the first resale. As that was at 15 cents, in this there was no correction to be suggested by counsel, and they are thereby excused from any charge of default in not having made the suggestion. In strict technical right, the plaintiff is entitled to a new trial, in order to have this error of the trial judge corrected. The same result, however, may be reached without the necessity of a retrial of the case by an alternative order.

It is therefore ordered that, upon the defendant tendering within 10 days to the plaintiff, or, if not accepted, paying into court, the sum of $104.65, in addition to the amount due upon the judgment, the rule for a new trial is discharged; otherwise, it is made absolute.