OMAHA BEVERAGE COMPANY, Appellant, v. TEMP BREW COMPANY, Appellee.

**TRIAL:** Reception of Evidence—Admission without Objection. A party may not sit by and allow evidence to be received without objection and thereafter have it stricken on motion.

**TRIAL:** Reception of Evidence—Objection after Answer—Necessity of Motion to Strike—Non-Reversible Error. An answer given to a question before an objection was sustained thereto, where no motion was made to strike the same, remained in the record, and no reversible error was presented as to the ruling in sustaining the objection to the question.

EVIDENCE:   Opinion   Evidence—Market   Value.   A   witness   who was a dealer in cereal beverages, and had inspected 80 half barrels of a cereal beverage, was qualified to testify as to the reasonable market value of the said beverage.

SALES:   Breach of Seller—Damages—Loss—Profits Allowed.   Where the seller of a cereal beverage, manufactured under a secret process, knew that the buyer could not obtain it elsewhere, and was purchasing it as a wholesaler, and for the purpose of filling orders from retailers, on a breach of the contract for same the purchaser was not only entitled to damages by reason of the difference between the market value and the contract price, but also to loss of profits which he would have realized if the cereal beverage had been delivered as agreed; and testimony as to the buyer's having orders for the entire carload of the beverage at a certain price was admissible as tending to prove the profits lost.

SALES:   Breach of Seller—Damages—Reduction of Damages—Profit on Other Goods Used for Filling Orders.   Testimony as to whether there was any profit on soft drinks furnished to the buyer's customers in place of a cereal beverage purchased, was admissible as bearing on the question of reduction of damages on a breach of the sale by the seller.

SALES:   Breach of Seller—Damages—Evidence—Seller's Knowledge —Purpose of Purchase.   Testimony that the agent of the seller knew the nature of the business in which the purchaser was engaged, and the purpose for which he was purchasing a carload of cereal beverage, and statements by an agent that prompt shipment would be made, were admissible as bearing on the measure of damages, and as showing the knowledge of the seller of the purpose for which the goods were being purchased.

EVIDENCE:   Reception of Evidence—Correction of Testimony on Rebuttal.   It is competent for a witness to correct his testimony, even though done in rebuttal.

APPEAL AND ERROR:   Right of Review—Overruling Motion for Directed Verdict—Waiver.   The introduction of further evidence after the overruling of a motion for the direction of a verdict, without a renewal of the motion at the close of the evidence, waives the ruling on the motion.

TRIAL:   Instructions—Requests Otherwise Covered.   There is no error in refusing requested instructions when, so far as correct, they were included in the ones given by the court.

**SALES:** Breach of Seller—Delay in Inspection by Buyer—No Unreasonable Delay. There was no unreasonable delay in inspecting goods delivered, where the buyer was required to pay for the goods before delivery, and, having several customers from whom orders had been taken, he delivered to them the goods so ordered, and made an inspection when the goods were opened for sale at retail.

**SALES:** Breach of Seller—Failure of Buyer to Use Care after Delivery. The buyer's right to recover for a breach of sale, where a cereal beverage was not of the quality of the sample, or was spoiled in transit by the seller's negligence, would not be defeated by the buyer's negligence to properly care for the same after its arrival.

**TRIAL:** Instructions—Non-Applicability of Evidence. Where, under the evidence, the time required for fermentation of a cereal beverage might exceed eight hours, an instruction was properly refused that, if the jury found that the cereal beverage had been in a condition of fermentation, there could be no presumption based thereon that it had been in such condition for more than eight hours.

**APPEAL AND ERROR:** Assignments of Error—Insufficiency. The sufficiency of the evidence to sustain a verdict not being challenged by an assignment of error bearing upon the same, an assignment that the "court erred in overruling defendant's motion for a new trial, for the reason that each ground for a new trial set out therein was a good, sufficient, and legal ground upon which said motion should have been sustained," was insufficient.

*Appeal from Des Moines Municipal Court.*—ESKIL C. CARLSON, Judge.

APRIL 14, 1919.

ACTION to recover an alleged balance owed to plaintiff. The defendant pleaded a counterclaim. Trial resulted in a verdict for the defendant and judgment thereon. Plaintiff appeals.—*Affirmed.*

*Domback, Granger & Engleman,* for appellant.

*Miller & Wallingford,* for appellee.

LADD, C. J.—Plaintiff is a corporation engaged in the manufacture of soft drinks, one of which is a beverage known as Oma, said to be something like beer, though without alcohol.

On June 8, 1917, plaintiff submitted samples of this liquid to the defendant, a corporation engaged in wholesaling soft drinks in the city of Des Moines, and procured of defendant an order for a carload of this product, being 145 half barrels of light Oma and 5 half barrels of dark Oma, at the rate of $2.75 per half barrel. The carload was shipped, and arrived in Des Moines, June 12th. It was accompanied by a bill of lading, to which was attached a sight draft for $413.75, and, of course, defendant was compelled to pay the sight draft before taking possession, in addition to freight charges. This action was brought to recover the purchase price of the carload of Oma, and the value of the half barrels in which it was shipped which had not been returned, less the amount of this sight draft. Subsequently, the half barrels were, by stipulation, returned to plaintiff, and the sole controversy arises on the counterclaim of the defendant. Therein, the defendant admitted the purchase and delivery of the Oma, as recited, alleged that it was unable to test or inspect the same before accepting, owing to the sight draft's being attached to the bill of lading; that, prior to receiving the Oma, it had sold said Oma at $4.25 per half barrel, and agreed to deliver it to retailers thereof in the city of Des Moines; that it so did to many of its customers, when the same was found by them to be worthless, unwholesome, nonpalatable, spoiled, and unsalable, and was returned; that 75 half barrels of the light Oma and 5 half barrels of the dark Oma were in such condition that defendant was compelled to destroy the same; that the purchase price thereof was $206.25, and its portion of the freight $26.52, making the cost of said worthless beverage to the defendant $247.77. The defendant further alleged that it had con-

tracted to sell to retailers the 80 half barrels at $4.25 a half barrel, or a total sum of $340, making a profit thereon of $92.23; and it prayed for judgment for the cost to it, plus such profit, or $340.   By way of reply, the plaintiff averred that the purchase of the carload of Oma was made on samples submitted to defendant, and that the same, when shipped, was of a grade and quality equal to the samples; that the defendant, when the carload arrived, failed and neglected to inspect and test the same before resale thereof; that such failure was due solely to its fault and neglect, and because of such omission, defendant waived all objection to the inferior grade and poor quality of said Oma; that, in purchasing same, defendant agreed to resell the drink within 14 days after the sale, which defendant failed to do.   It is further alleged that, had it been sold within said time, the quality would have been palatable and merchantable, and that any inferiority in quality was owing to its retention from sale longer than 14 days.

I.   Each of eight witnesses had testified to being engaged in keeping a place where soft drinks were kept for sale, to having ordered Oma from the defendant, and that said liquid was roily, sour, nasty, and unpalatable, and had a bad smell, described by some as "musty and bad," and by one as having a "rotten, kind of skunky smell." This evidence went in without objection.

1. TRIAL: reception of evidence: admission without objection.

Later, counsel for plaintiff moved that the testimony of these witnesses relative to a resale of the Oma, and also the fact that contracts had been made, be stricken from the record; "for the reason that it is incompetent, immaterial, and irrelevant, and does not determine the proper measure of damages, in so far as it is offered to prove a measure of damages," and for that a party may not sit by and allow evidence to be received without objection, and thereafter have it stricken on motion.

II.   Adelman, president of the defendant company, was asked:

"What was the selling price of Oma on the market in Des Moines at that time?  What were you getting for Oma?  A. Nine dollars per barrel."

2. TRIAL: reception of evidence: objection after answer: necessity of motion to strike: non-reversible error.

Plaintiff's counsel moved then and objected as incompetent, immaterial, and irrelevant, and not tending to establish the proper measure of damages.  After some parley, the objection was sustained.  Even though the subject was to be taken up after dinner, this ruling was not changed.  Moreover, as the objection was interposed after the answer had been given, and there was no motion to strike the same, the answer remained in the record.  There was no reviewable error.

III.   Adelman was asked for his opinion, based on inspection and his knowledge of cereal beverages, as to the reasonable market value at Des Moines, on or about June 14, 1917, of the 80 half barrels of Oma.  An

3. EVIDENCE: opinion evidence: market value.

objection as incompetent, immaterial, and irrelevant, and no proper foundation laid, nor showing of the extent of witness' inspection, was overruled, and rightly so.  The witness had testified to being a dealer in cereal beverages, and to an inspection of the Oma supplied the several customers from whom he had received orders; and this sufficiently qualified him to testify.  Its actual value was material, as bearing on the measure of damages, regardless of whether such measure were as contended by one or the other of the parties.

The witness also testified that he had taken orders for the entire carload of Oma at $4.25 per half barrel.  This was admissible, as tending to prove the profits lost because of the

Oma's not having been of the quality of the
**4. SALES: breach of seller: damages: loss: profits allowed.** sample submitted. One of the controversies in the trial was whether the measure of damages was the difference between the contract price and the actual value, or this plus the profits lost by the purchaser in consequence of the commodity's not being such as the contract exacted. The seller was the manufacturer of the liquid known as Oma, and this was by a secret process. In taking defendant's order, it not only knew that the commodity was not obtainable elsewhere, but that defendant was purchasing as a wholesaler, and for the specific purpose of filling orders from retailers, and that its only purpose in ordering the liquid was that of disposing thereof to retailers at a profit. Sales had been made to retailers in advance, so that the profits to be reaped were not uncertain or speculative. If other soft drinks were supplied retailers in its stead, this was done without profit. The case is ruled by *Portable Elev. Mfg. Co. v. Bradley, Merriam & Smith,* 158 Iowa 19. See, also, *Hichhorn v. Bradley,* 117 Iowa 130; *Rule v. McGregor,* 117 Iowa 419. The law is well settled that, under the circumstances disclosed in this case, in event of a breach of the contract of sale, the purchaser is entitled to recover, not only the difference between the contract price and the market value of the commodity sold, but also for the loss of profits, if any, which the purchaser would have acquired, had the goods been as agreed. Omission of such loss would have failed to compensate for the injury suffered. The law contemplates full compensation for all damages ascertainable with reasonable certainty; and, as the profits which would have been acquired, but for plaintiff's breach of the contract, were definitely proven, there is no reason for denying recovery thereof.

IV. Objection to a question asked Adelman as to whether there was any profit on soft drinks furnished customers instead of Oma was overruled, and rightly so. Had

any profit been derived therefrom, it must have been considered as a reduction of any damages resulting in consequence of loss of profits on the Oma, and this evidence obviated any such offset.

5. SALES: breach of seller: damages: reduction of damages: profit on other goods used for filling orders.

The same witness was allowed to testify, over objection, in substance that the agent of plaintiff knew the nature of the business in which defendant was engaged, and for what purpose he was purchasing the carload of Oma. What we have said concerning the measure of damages sufficiently indicates the admissibility of such testimony.

6. SALES: breach of seller: damages: evidence: seller's knowledge: purpose of purchase.

The witness was asked if he said anything to plaintiff's agent about the necessity of prompt shipment because of having orders for the goods. Objection thereto as incompetent, irrelevant, and immaterial was overruled, and, as we think, rightly. True, there was no issue concerning the delay in shipment, but the answer disclosed that the witness had said to plaintiff's agent that the goods were required immediately, for that customers had given their orders, and were waiting for the goods to arrive. This was material, as disclosing the knowledge of plaintiff of the purpose for which the goods were being purchased.

V. Adelman had first testified that the goods arrived on June 14th. Subsequently, the plaintiff's agent swore that its sight draft, attached to the bill of lading, was paid on June 12th. Thereafter, and in rebuttal, Adelman was asked when the car was emptied and the contents taken to the warehouse and customers, and, over objection, answered, "On June 12th." This was objected to as not proper examination in rebuttal, and the objection rightly overruled. It was competent for the witness to correct his testimony, even though this were done in the course of the introduction of evidence in rebuttal.

7. EVIDENCE: reception of evidence: correction of testimony on rebuttal.

VI.   At the conclusion of the evidence introduced in support of the counterclaim, the plaintiff moved that the jury be directed to return a verdict in its favor.   The motion was overruled.   Error is assigned in this ruling, and exhaustively argued.   Subsequently, the defendant's evidence was introduced, and also evidence in rebuttal.   The introduction of further evidence waived the ruling on the motion, and as the plaintiff did not renew such motion at the close of the evidence, it is not in a situation to question the ruling as then made.

8. APPEAL AND ERROR: right of review: overruling motion for directed verdict: waiver.

VII.   Counsel for plaintiff requested that several instructions be given.   All were refused.   The ruling of the court is to be approved, on the ground that each, in so far as correctly stating the law, was included in those given.   Thus, Instruction A, requested, was fully covered by the third instruction given.   As contended, the duty of plaintiff was said in the latter "to be to take ample and sufficient precaution to properly protect such goods while in transit."   That it was its duty is not questioned, but it is argued that it was only required to exercise reasonable care in so doing; and such is the law, and the jury was so told, later on, by saying that, if the liquid conformed to sample, and was "properly prepared for shipment by icing reasonably sufficient to carry to destination, even though said goods might have deteriorated or become different thereafter, the defendant will not be entitled to any recovery on his counterclaim."   There was no controversy as to preparation, save as to the icing; and to have exercised reasonable care, plaintiff must have prepared for shipment "by icing reasonably sufficient to carry to destination," and so icing necessarily was consequent of exercising reasonable care.   Though not accurately worded, the instruction conveyed the thought intended; for the manner of icing, together with the condition of the Oma

9. TRIAL: instructions: requests otherwise covered.

and the car upon arrival at Des Moines, was the only basis on which to determine whether plaintiff had exercised ordinary care. There was no reversible error in refusing the requested instruction.

VIII. The carload of Oma reached Des Moines, June 12th, and some of the half barrels were delivered to customers therefrom, and the rest placed in a cold storage plant. A day or two later, Adelman examined that delivered to customers, and found it in the condition described by them, and was compelled to take it back. Appellant requested, in Instruction B, that, "if the defendant, in the exercise of reasonable care, could have inspected the shipment prior to resale and delivery to its customers, though it did not make such inspection, then such delivery and resale to customers was an unconditional acceptance of the Oma by the defendant, and your verdict should be for plaintiff."

10. SALES: breach of seller: delay in inspection by buyer: no unreasonable delay.

Undoubtedly, sales by samples imply a warranty that the goods shall be of like quality and character as the samples, and contemplates an inspection by the purchaser, and this must be done within a reasonable time, and prior to the acceptance of the goods purchased. An acceptance implies, not only the physical act of receiving the goods, but also the intention of retaining them. Here, to the bill of lading was attached a draft, and the plaintiff was required to pay this before obtaining possession of the carload shipped. Possibly it might have examined the goods by breaking open the half barrels before unloading, but it would hardly seem that this would be required, and, as the plaintiff had several customers from whom orders had been taken, these were supplied with the half barrels, and they were opened by them, and were conclusively shown not to have been of the character or quality of the sample on which the carload was ordered. As these half barrels were delivered to the customers from the

car, and immediately inspected by opening for sale at retail, we are of opinion that there was no unreasonable delay in inspecting the goods delivered, and for that reason, the court did not err in refusing to instruct the jury as requested. *Rhynas v. Keck,* 179 Iowa 422; *M. & M. Co. v. Hood Rubber Co.,* 226 Mass. 181 (115 N. E. 234); *Mueller v. Simon* (Tex.) 183 S. W. 63.

It is said in 2 Mechem on Sales, Section 1377:

"The buyer's right of inspection includes a reasonable time within which to make it, and imposes upon him the duty to make it within that time after the goods have been received or tendered for acceptance; what is reasonable being here, as in other cases, a question of fact, dependent upon the circumstances of each case, the situation of the goods, the nature of the business, and the customs of the trade."

Instruction D was asked, stating, in substance, that it was the duty of defendant to exercise reasonable care in cooling the car and icing the shipment after its arrival in

11. Sales : breach of seller : failure of buyer to use care after delivery. Des Moines, and that the burden of proof was upon it to show that such care was exercised, and that, unless so proven by preponderance of evidence, the verdict should be for plaintiff. The only bearing on the care bestowed by defendant on the car and its contents after arriving at Des Moines was as to the quality of the Oma when loaded in the car at Omaha, Nebraska, and the manner of plaintiff's icing the same. Though the defendant neglected to properly care for the car or its contents after its arrival in Des Moines, if the Oma, when loaded at Omaha, Nebraska, was not of the quality of the sample, or was spoiled in transit because of plaintiff's neglect in not preparing the same for shipment, the defendant must have recovered, and the instruction requested was erroneous in stating otherwise. For this reason, there was no error in its refusal.

In Instruction G, requested and refused, counsel for

plaintiff requested that the jury be told that, if the Oma was found to be unpalatable and unmerchantable, with an obnoxious odor, not clear in color, no presumption could be based thereon that it had been in such condition for a period exceeding eight hours, and that "the earlier existence of such condition more than eight hours prior thereto must be established by defendant by preponderance of the evidence."

12. TRIAL: instructions: non-applicability of evidence.

The only evidence bearing on the length of time required for fermentation was that of the president of the plaintiff company, who testified that:

"Oma will get rily after it has been allowed to be in a warm room for at least from eight to ten hours. It will foment according to the different temperatures, sometimes 24 hours; but if it is warm, say 46, it would only be a matter of 6 or 8 hours.   *   *   *   Oma in casks, exposed to atmospheric surroundings, will last, in a warm room in June, probably from 6 to 10 hours."

This was not saying that a longer period might be required for fermentation under different conditions. Indeed, it is fairly to be inferred from the answer that, under different conditions, more or less time would be required; and there was no room for an instruction which stated that, in any event, the time required did not exceed eight hours. For this reason, the instruction was rightly refused.

Other instructions requested are disposed of by what has been said.

The sufficiency of the evidence to sustain the verdict is challenged in the argument, but not by any assignment of error or brief point, save that the seventeenth assignment of error recites that the "court erred in overruling appellant's motion for a new trial, for the reason that each ground for a new trial set out therein was a good, sufficient, and legal ground upon which said motion

13. APPEAL AND ERROR: assignments of error: insufficiency.

should have been sustained." This was not sufficient as an assignment of error, and there was no brief point or proposition therein, nor any argument. We may say, however, that the verdict is amply supported by the evidence adduced, and the judgment is—*Affirmed.*

GAYNOR, PRESTON, and STEVENS, JJ., concur.