## PIPE & TUBE BENDING CORPORATION OF AMERICA v. CORNINE–HAKANSON DIE–CASTING CO., Inc.

Circuit Court of Appeals, Third Circuit. June 20, 1928.

No. 3747.

1. Work and labor ⬳18—Action for work done and materials furnished held properly brought in indebitatus assumpsit.

Action on quantum meruit for work done and materials furnished in manufacture of certain dies, castings, molds, and vending machines *held* properly brought in indebitatus assumpsit.

2. Work and labor ⬳30(2)—In action on quantum meruit for work done and material furnished, court held to have properly submitted clear issue of fact.

In suit in assumpsit, as to first count on quantum meruit for work done and material furnished in manufacture of dies, castings, molds, and vending machines, court *held* not to have erred in submitting issue of fact as to whether checks sent by defendant to plaintiff were to be applied on first or second order.

3. **Appeal and error ⚖1062(4)—Contracts ⚖ 176(2)—Contract held ambiguous, and construction properly submitted to jury; but, if not ambiguous, submission to jury held not prejudicial.**

Written contract, for breach of which plaintiff is seeking recovery of money expended and profits lost, and which was in main made by correspondence, *held* to be ambiguous, and hence its construction was properly submitted to the jury; but, if not ambiguous, error, if any, in submitting construction to jury, was not prejudicial, where construction which court should have given it is that which the jury, judging from the verdict, gave it.

4. **Damages ⚖208(1)—In action for moneys expended and profits lost on breach of contract. evidence of profits held sufficient to go to jury.**

In action for moneys expended and profits lost on breach of contract for manufacture of vending machines, requested charge that evidence as to profits on contract was too uncertain and speculative, and that jury must not consider profits as part of damages, *held* properly refused.

5. **Evidence ⚖112—In action for work done and materials furnished in manufacture of vending machines, evidence as to price at which defendant contracted to sell machines held properly admitted.**

In an action on quantum meruit for work done and materials furnished in manufacture of dies, casting, molds, and vending machines, testimony as to price at which defendant had contracted to sell vending machines was properly admitted, as it had a bearing on the question of reasonable value of work done and materials furnished; the product being a specialty, for which there was no general market, and no standard cost of comparison.

In Error to the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Suit by the Cornine-Hakanson Die-Casting Company, Inc., against the Pipe & Tube Bending Corporation of America. Judgment for plaintiff, and defendant brings error. Affirmed.

Bernard V. McGovern and Riker & Riker, all of Newark, N. J. (Andrew Van Blarcom, of Newark, N. J., of counsel), for plaintiff in error.

August C. Streitwolf, of New Brunswick, N. J. (John G. Poore, of New York City, and Everett H. Brown, Jr., of Philadelphia, Pa., of counsel), for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. Cornine-Hakanson Die-Casting Company brought this suit in assumpsit against the Pipe & Tube Bending Corporation of America and filed a complaint containing two counts—the first, on a quantum meruit for work done and materials furnished in the manufacture of certain dies, castings, molds and vending machines; the second, for moneys expended and profits lost under a written contract for the manufacture of 2,000 additional vending machines. The position of the Die-Casting Company was that the defendant breached the contract through its failure to furnish it boxes or cases in which to assemble the machines; the position of the defendant was that the Die-Casting Company was responsible for the delivery of these boxes and that it breached the contract by failing to obtain the boxes and deliver the assembled machines within the time specified in the contract. The jury rendered a verdict for the plaintiff for $7,000 on the first count and $8,700 on the second, accompanied with a finding of no cause of action on a counterclaim filed by the defendant. To the judgment that followed the defendant sued out this writ of error.

There was at the trial much conflicting testimony arising from opposite understandings not unusual in cases where parties enter into contractual undertakings, implied and expressed, concerning undeveloped and unproved business ventures and where the buying party does not know exactly what he wants and the producing party does not know exactly how to make it and neither party is able or willing to finance the whole venture. And so the issues in this case, touching matters of law lightly, concern essentially disputes of fact. These issues are complicated and sharply controverted and as they are peculiarly of a character for a jury to decide, our concern on this review has been to determine whether they were properly submitted. We find they were, and briefly for these reasons:

[1, 2] The action on the first count is properly in indebitatus assumpsit. Speaking of the parties as they stand on the record, the defendant (Pipe & Tube Bending Corporation) engaged the plaintiff (Cornine-Hakanson Die-Casting Company) to design, develop and manufacture dies from which castings for sandwich-vending machines were to be made. When they were about completed, the defendant decided to change from a sandwich-vending machine to a candy-vending machine. This required the plaintiff to remodel the mechanism, and change some dies, and make others altogether new. Still more changes followed. The defendant was all along advancing weekly payments

at a fixed sum on account. Eventually the defendant ordered the plaintiff to stop work. Thereupon it brought this suit, and by the first count claimed $23,009.68 as the amount due on the first order, and admitted payments on account in the sum of $15,853.08. It also admitted receiving additional payments; one group totaled $6,300 and was made by checks marked "to apply on second order" (second count). Though thus marked the plaintiff testified that the defendant authorized the application of these checks to the first order. Here was a clear issue of fact, we think properly submitted; but, if wrong, it made no money difference to either party because this sum was certainly intended to be credited to one order or the other; if to the first as the plaintiff claims it left a balance due of only a few hundred dollars under the first count and correspondingly left a larger balance due on the second order under the second count; if it was intended to be credited to the second, it made a balance of $7,156.60 due on the first order and a corresponding reduction in the second. The jury apparently found the $6,300 should be credited to the second order and evidently made a deduction of that amount in arriving at its verdict of $8,700 on the second count and accordingly allowed the plaintiff practically the whole of its claim on the first count.

We find no errors committed by the court in submitting this or any other issue under the first count.

The written contract declared on in the second count was in the main made by correspondence. It began with a letter written by the defendant to the plaintiff on May 4, 1926, requesting the plaintiff to manufacture 2,000 vending machines and promising to pay $19 for each machine "plus the box which *we* [the defendant] *will furnish.* However, it is our understanding that you [the plaintiff] will make the contract for the box and hold the people responsible for the *quality* of the boxes, we assuming the payment for same." The letter provided that deliveries should begin on a named date in a stated volume. Then the parties began to run hither and thither. The plaintiff on the next day, May 5, handed a communication to Karp Metal Products Company beginning with the words: "This is to confirm *our agreement* to-day with Karp Metal Products Company * * * for making two thousand (2,000) steel boxes as the following specification," given with particularity and in detail. The writing was not addressed to Karp but was "accepted" by that company, whatever that may mean, and contained no terms as to price or deliveries.

The defendant says this was a contract between the plaintiff and Karp for whose performance (except payment) the plaintiff alone was responsible; the plaintiff says it was only specifications for the proposed box for which the defendant was to contract as well as to make payment.

On the next day, May 6, the defendant gave Karp a written "purchase order" for 2,000 boxes, "to be made according to specifications outlined by Cornine-Hakanson [the plaintiff] and attached herewith. * * * Deliveries being the essence of *this contract,* it is hereby *agreed*" that Karp should make deliveries on a named date. On the same day the defendant gave the plaintiff a "purchase order," similar in form to the one it had given Karp, for 2,000 vending machines at $19 each, "plus the cost of boxes purchased from Karp Metal Products Company." Just what this means was disputed. The order provided that deliveries of completed machines should begin on a certain date which was subsequent to Karp's date for delivering the boxes. Karp defaulted. Whether the contract with Karp was the plaintiff's or the defendant's contract determined the question whether the breach of the contract in suit by the failure to deliver vending machines, consequent upon Karp's failure to deliver boxes, was the breach of the plaintiff or of the defendant. According as where lay the breach, the verdict necessarily would be for one or the other of the parties.

[3] In this situation the learned trial court regarded the terms of the writings ambiguous and submitted their construction for the jury to determine not from their words alone but from the construction which the parties themselves had put upon them by their actions. Brooklyn L. Ins. Co. v. Dutcher, 95 U. S. 269, 24 L. Ed. 410. *The defendant at the trial maintained and on this writ of error insists that the construction of the contract was for the court. We think the contract as made by the several writings was ambiguous, and its construction was for the jury.* Brooklyn L. Ins. Co. v. Dutcher, 95 U. S. 269, 24 L. Ed. 410; Rankin v. Fidelity Co., 189 U. S. 243, 23 S. Ct. 553, 47 L. Ed. 792; West v. Smith, 101 U. S. 263, 25 L. Ed. 809; Kennedy v. National Tube Co. (C. C. A.) 255 F. 1. But, if it was not, we hold the construction which the court should have given it is that which the jury, judging from the verdict, gave it. Davis v. Snyder, 196 Pa. 273, 46 A. 301; Pence v. Langdon, 99 U. S. 578, 25 L. Ed. 420; Erie Food Products Co.

v. Interocean Mercantile Corp. (C. C. A.) 299 F. 71. In consequence there was no error, or, if error, it was not prejudicial. Clearly the defendant was not entitled to a directed verdict; and for like reasons it was not entitled to the instructions contained in its third and fourth requests to charge.

[4] The assignments that the court erred in not charging the defendant's requests that:

"1. The evidence as to profits on the second contract is too uncertain and speculative and therefore you must not consider the profits as part of the damages," and

"2. If the jury finds that the plaintiff is entitled to any damages there should be no award of damages which is based upon testimony which is remote, speculative or uncertain"

—are practically assignments against the whole volume of testimony which the plaintiff introduced on that issue. The sufficiency of that testimony to sustain a verdict for the plaintiff was in effect passed upon by the trial court when it refused the defendant's motion for a directed verdict. The trial court was right in refusing to charge the first request and we think it practically covered the second in its general instructions.

[5] The remaining assignment charges error to the court in admitting testimony as to the price at which the defendant had contracted to sell the vending machines. The evidence was offered only in connection with the plaintiff's claim on the quantum meruit contained in the first count and had a bearing on the question of reasonable value of the work done and materials furnished, the product being a specialty for which there was no general market and no standard of cost comparison. This testimony, though in no sense controlling, had a probative value which made it admissible.

The judgment is affirmed.