ED S. MICHELSON, Inc., v. NEBRASKA TIRE & RUBBER CO.*

No. 9592.

Circuit Court of Appeals, Eighth Circuit.

Feb. 25, 1933.

*Rehearing denied April 25, 1933.

598

William G. Boatright, of Kansas City, Mo. (I. J. Ringolsky and Harry L. Jacobs, both of Kansas City, Mo., on the brief), for appellant.

Richard S. Righter, of Kansas City, Mo. (T. H. Reynolds, George O. Pratt, and Lathrop, Crane, Reynolds, Sawyer & Mersereau, all of Kansas City, Mo., on the brief), for appellee.

Before KENYON, GARDNER, and SANBORN, Circuit Judges.

GARDNER, Circuit Judge.

This is an action brought by the appellee as plaintiff against the appellant as defendant, to recover the sum of $40,000, the alleged value of certain tires deposited by plaintiff with defendant to insure the performance of a certain contract between them.

The answer put in issue the allegations of the petition, and pleaded certain counterclaims which in effect charge that the tires as manufactured by plaintiff did not comply with the specifications mentioned in the contract, in that they were short in weight, and by reason of the failure of the tires to comply with the specifications they were of less value, resulting in damage to defendant in various large amounts, aggregating approximately $465,724.

The parties will be referred to as they were designated in the lower court.

Plaintiff had owned and operated a tire factory at Omaha, Neb., for a number of years, and since 1921 had sold to defendant the largest part of its output. Defendant supplied plaintiff with all the crude rubber necessary for the manufacture of the tires it purchased, and also advanced cash at times to plaintiff. The sole customer of defendant for the tires manufactured by plaintiff has been the Western Auto Supply Company, which has conducted a large retail tire business, and each year that defendant has made its contract with plaintiff it has entered into a contract with the Western Auto Supply Company for resale of plaintiff's manufactured product at a price in advance of that to be paid by it to plaintiff. Defendant did not handle the tires ordered, but sent orders to plaintiff, and plaintiff in turn shipped the tires direct to the Western Auto Supply Company. Invoices for the cost of the tires were sent to defendant, and on these invoices credits were indorsed for the amount of crude rubber supplied by defendant and supposed to be contained in the tires invoiced.

The contract here involved was for the year 1927. On February 23, 1927, defendant entered into a contract with Western Auto Supply Company, by which it agreed to furnish that company with requirements of tires during 1927, and following its practice of preceding years, it then entered into a contract with plaintiff for the manufacture and purchase of the tires necessary to enable it to furnish the Western Auto Supply Company with the tires covered by its contract with that company. By its contract with plaintiff plaintiff undertook and agreed to manufacture and sell defendant, and defendant agreed to accept and pay for, not less than a minimum of 10,000 tires per month, beginning April 1, 1927, and ending December 31, 1927, and not to exceed a monthly maximum of 30,000 tires. Within these limits the quantity of tires to be manufactured by plaintiff was solely at the option of defendant. Defendant agreed to furnish all crude rubber necessary to manufacture the tires ordered by it, and as tires were shipped and invoices sent to defendant, an allowance and deduction was to be made on such invoices for the value of the crude rubber contained in the tires covered thereby. Concurrently with the signing of the contract, and pursuant to one of its provisions, plaintiff delivered to defendant tires of the value of $40,000 acceptable to defendant, to be held by defendant as security for the full and faithful performance of the terms of the contract. Defendant was given the right to sell these tires at such time and for such price as it should deem advisable, and to hold the proceeds of such sale in lieu of the tires, as security.

Defendant resold the tires which it alleges were defective, to the Western Auto Supply Company at a profit of approximately 10 per cent., and it received the full agreed contract price for them. Mr. W. W. Humphrey, secretary and general manager of that company, testified that the prices of tires set out

in the contract between his company and the defendant were the fair and reasonable prices for the tires furnished; that the weight of the tires furnished under the contract with defendant was not a material factor, and that tires were not bought by weight; that all adjustments on tires purchased from the defendant in 1927 were made satisfactory to the Western Auto Supply Company; and that the tires purchased from the defendant during the year 1927 were equal or superior to those purchased in the same class of tires from the defendant during 1926. The witness further testified:

"Q. Now, you say that the tires you received from Mr. Michelson, and from the Nebraska Tire Company were as good as the tires you had ordered—contracted for, is that right? A. Yes.

"Q: Came up to the tires you contracted for, is that right? A. Yes.

"Q. And that they were worth as much as the tires you agreed to pay for, is that right? A. Yes."

The court in effect instructed the jury to find in favor of the plaintiff in the sum of $39,795 on its cause of action, but submitted the issues raised on defendant's counterclaims under instructions, to certain of which exceptions were saved by defendant. The jury returned a verdict in favor of the plaintiff, finding against the defendant on its counterclaims. From the judgment entered on this verdict defendant has appealed, contending that the court erred: (1) In admitting evidence of the price obtained by defendant on resale of the tires to Western Auto Supply Company; (2) in charging the jury that it might consider the evidence of the price obtained on resale in determining whether plaintiff had substantially complied with its contract by furnishing tires equal in value to those contracted for; (3) in admitting evidence tending to show that it was not customary in contracts of the character here involved, to specify the weight and crude rubber content, or if specified that they were only approximations; (4) in charging the jury that the crude rubber content was determined solely by the quantity of crude rubber placed in the batch; (5) in directing the jury to find for plaintiff on its cause of action; and (6) in sustaining demurrers to certain paragraphs of its counterclaims.

So far as the argument is directed to the ruling of the court in admitting evidence of the price received by defendant on resale of the tires, it should be noted that the as-signment of errors filed in the lower court with the petition for appeal contain no objections, no rulings by the court, and no exceptions by the defendant. When the assignment of errors upon which defendant is relying were printed in its brief, it was sought to expand and enlarge them, and there have been brought into them pages of printed matter not embodied in the assignment of errors as filed with the lower court. There has been no application made to this court for leave to file additional, or supplemental, or amended assignment of errors, and appellant is, therefore, bound by the assignment of errors as filed in the lower court, and they are obviously insufficient to present any question of the alleged error of the court in admitting evidence. The point is not of the utmost importance because the same objection is urged to that part of the instructions wherein the court charged the jury that it might consider the evidence of the price obtained by defendant on a resale, in determining whether plaintiff had substantially complied with its contract by furnishing tires equal in value to those contracted for.

It is insisted by defendant that the correct measure of damages applicable to the facts in this case was the difference between the value of the tires as actually manufactured, and their value had they been manufactured in exact accordance with the specifications contained in the contract. Defendant relies largely upon what is said by this court in Union Selling Co. v. Jones (C. C. A. 8) 128 F. 672, 678, where, in an opinion by Mr. Justice Van Devanter, then a judge of this court, it is said: "The proper measure of damages applicable to a case like this is the difference between the actual value of the property at the time of the sale and what its value would have been if it had conformed to the warranty. Schreiber v. Andrews, 41 C. C. A. 663, 666, 101 F. 763. And neither the vendee's right of recovery, nor the measure of his damages, is dependent upon a resale by him or upon the price obtained at a resale. At most, the price thus obtained may be some, but not conclusive, evidence of the actual value. Muller v. Eno, 14 N. Y. 597, 607, 609; Bach v. Levy, 101 N. Y. 511, 515, 5 N. E. 345; Brock v. Clark, 60 Vt. 551, 15 A. 175; Atkins v. Cobb, 56 Ga. 86, 90; Reggio v. Braggiotti, 7 Cush. [Mass.] 166, 169; Clare v. Maynard, 7 C. & P. 741, 32 E. C. L. 849. But where the resale is with a warranty of quality, or in ignorance of the actual quality, it is not any evidence of the value of the article in its inferior condition. Mul-

ler v. Eno, supra; Brown v. Bigelow, 10 Allen [Mass.] 242; Miamisburg, etc., Co. v. Wohlhuter, 71 Minn. 484, 74 N. W. 175."

The facts in the case of Union Selling Co. v. Jones, supra, are in two particulars at least quite different from those in the case at bar. In that case, Jones sued to recover damages for breach of an express warranty of the quality of twine sold him by the Union Selling Company under a written contract. He was a retail dealer and purchased the twine for sale to farmers in his vicinity, to be used by them in binding their grain. In other words, he bought the twine for resale on the open market, while in the instant case defendant purchased the tires from plaintiff for the sole and only purpose of fulfilling a contract which it had theretofore made with the Western Auto Supply Company. The goods as manufactured bore the brand of the Western Auto Supply Company, went directly to that company, and the maximum price which defendant could in any event receive for the tires was fixed by its contract with the Western Auto Supply Company. Hence, it could not make any additional profit by reason of any supposed superior quality of the product, as Jones might have made by sale on the open market. Defendant had precluded any such possibility by its contract. Again, in the Jones Case, it appears that Jones resold the twine on a guaranty, on which, if the twine were defective, he was liable for damages. In the instant case, it appears that the tires were resold to the Western Auto Supply Company, accepted by that company, and paid for in full. The manager of that company testified that the tires came up to the standard of tires his company had contracted for and that they were worth as much as the tires his company had contracted for. It cannot, therefore, be argued that the defendant might be held liable for damages on its contract with the Western Auto Supply Company.

As further distinguishing the instant case from the Jones Case, it is observed that plaintiff not only proved the resale of the tires at a profit, but it proved by the managing officer of the Western Auto Supply Company that the prices named in the contract between that company and the defendant averaged about 10 per cent. more than plaintiff was to receive from defendant; that these prices were fair and reasonable for the tires actually furnished in 1927; and that all adjustments on these tires were satisfactory to it. The contract between the Western Auto Supply Company and defendant, which, prior to the trial, had been fully executed, provided that the tires furnished in 1927 should be equal in standard to those furnished in 1926, and this witness testified without qualification that the tires purchased by his company in 1927 were equal or superior to those purchased in 1926. This testimony at least tended to show that the tires were worth what the Western Auto Supply Company agreed to pay for them. The price which defendant received from the Western Auto Supply Company was, therefore, but one element going to prove the value of the tires. The manager of the Western Auto Supply Company, the retailer handling the tires, should have been in as good a position to testify to their quality as any one obtainable. This was substantial evidence that the tires as manufactured and delivered were worth as much as they would have been had they been manufactured in strict accordance with what the defendant claims were the requirements of the specifications in its contract with plaintiff. True, there were opinions of witnesses of the defendant that the tires were of less value than defendant agreed to buy; but in the light of the testimony just referred to, the jury may well have disbelieved these opinions. In fact, they seem to be in conflict with demonstrated physical facts, and, as said by this court in United States v. Harth (C. C. A. 8) 61 F.(2d) 541, 544, "Neither court nor jury may credit testimony positively contradicted by physical facts." See, also, United States v. Hill (C. C. A. 8) 62 F.(2d) 1022; United States v. McGill (C. C. A. 8) 56 F.(2d) 522; American Car & Foundry Co. v. Kindermann (C. C. A. 8) 216 F. 499; Missouri, K. & T. R. Co. v. Collier (C. C. A. 8) 157 F. 347. The court adopted defendant's theory as to the rule of damages, but instructed the jury that it might consider the evidence with reference to the resale in determining whether or not the plaintiff had substantially complied with his contract by furnishing tires equal in value to those contracted for.

It cannot be said that evidence of the price received by purchaser on resale should never be considered in determining the amount of damage, if any, suffered by the purchaser. Such a statement is too broad. Ommen v. Talcott (D. C.) 175 F. 261; In re Bloch (C. C. A. 2) 109 F. 790; Pipe & Tube Bending Corp. v. Cornine-Hakanson Die-Casting Co. (C. C. A. 3) 27 F.(2d) 32; Mitchell v. Commissioner of Internal Revenue (C. C. A. 2) 48 F.(2d) 697; Oxford Paper Co. v. United States (Ct. Cl.) 56 F.(2d) 895.

It does no violence to the doctrine of Union Selling Co. v. Jones, supra, to hold that where, as here, the purchaser of the property on resale gives a value to it, and where he has become familiar with all the circumstances affecting its value, his testimony with reference to the price paid should be given consideration by the jury, as one of the circumstances to be considered by it in connection with other evidence. Hard & Rand v. Biston Coffee Co. (C. C. A. 8) 41 F.(2d) 625. In fact, there is authority for the proposition that where the seller knows the goods are purchased for resale under a particular contract, the profits will be the measure of damages. Here, the plaintiff as seller knew that the defendant as buyer had an existing contract to resell at a profit, and that the purchase was made to fulfill such contract. Under such circumstances it is very generally held that losses or profits may fairly be deemed as having been within the contemplation of the parties, and on breach of the contract are recoverable as damages. Independent Brewing Ass'n v. Burt, 109 Minn. 323, 123 N. W. 932; Wolcott v. Mount, 36 N. J. Law, 262, 13 Am. Rep. 438; Sussman v. Mitsui & Co., 114 Wash. 294, 195 P. 3; Pann v. Fay Fruit Co., 110 Cal. App. 726, 294 P. 733; Omaha Beverage Co. v. Temp Brew Co., 185 Iowa, 1189, 171 N. W. 704; Guetzkow Bros. Co. v. Andrews, 92 Wis. 214, 66 N. W. 119, 52 L. R. A. 209, 53 Am. St. Rep. 909. And while, as a general rule, the right to recover damages is limited to such damages as arise out of the contract on which the action is founded, and damages or losses arising out of a collateral contract affected by breach of the contract sued upon cannot be recovered, yet where the collateral contract was in the contemplation of the parties to the original contract when it was made, the latter, as in the instant case, being made with reference to the former, there may, upon the breach of the original contract, be a recovery in damages for losses sustained or gains prevented with reference to the collateral undertaking. If this be true, it would seem logically to follow that in defense to defendant's counterclaims plaintiff was entitled to show, in mitigation or reduction of the amount of damages, any fact connected with the claimed loss which tended to reduce the amount of loss actually suffered by defendant. In fact, it was the duty of defendant to exercise reasonable care to minimize the damages or losses, and in the instant case defendant's care and prudence have been such that it has in fact suffered no actual loss.

The primary object of an award of damages in a civil action is just compensation, indemnity, or reparation for the loss or injury sustained. Such damages, unless punitive in character, are confined to compensation, and the law does not contemplate that the party recovering for breach of a contract should be better off because of the breach than he would have been had the contract been carried out according to its terms. In fact, the party breaching a contract is generally entitled to show, in mitigation or in reduction of the amount of damages, any facts surrounding the injury complained of, which tend to reduce the amount required for just compensation. Defendant received the substantial profit which it contracted for on the resale of these tires, and if it were awarded damages in this case it would receive two profits out of a contract that guaranteed it but one, and it would be very substantially better off because of the breach of the contract than it would have been had the contract been literally carried out. Rules for the measure of damages must not be considered in the abstract, without reference to the facts and circumstances of the case, and it must always be borne in mind that the purpose of the law is to compensate, indemnify, or make reparation for the injury or loss actually suffered. Defendant's market on resale was not dependent upon the market price, but was a price fixed by contract, and it would be against all justice to permit it to make a profit by the breach of this contract, to be compensated for a loss it never suffered, and to be placed, not in the same position in which it would have been if the contract had been performed, but in a much better position.

We need not approve the instruction as given with reference to the measure of damages; but it is sufficient to say that it is certainly as favorable to defendant as could have been given under any reasonable view of the law, and hence it cannot complain. If the jury, under the undisputed evidence, had returned a verdict in favor of the defendant in this case for any amount in excess of nominal damages, it would not have been sustained by substantial evidence, and hence the question of the technical and absolute correctness of the instruction complained of becomes academic. The admitted facts preclude recovery. Cincinnati, etc., Gas Illuminating Co. v. Western Siemens-Lungren Co., 152 U. S. 200, 14 S. Ct. 523, 527, 38 L. Ed. 411; Johnston Mfg. Co. v. Wilson Thread Co. (C. C. A. 4) 269 F. 555, 558; Texas Co. v. Pensacola Maritime Corp. (C. C. A. 5) 279 F. 19, 24 A. L. R. 1336; Kaye v. Eddystone Ammunition Corp. (D. C.) 250 F. 654; Simon Bros. v. Glenmore Distilleries Co., 169

Ky. 405, 183 S. W. 913; Joplin Water Company v. Bathe, 41 Mo. App. 285.

In Cincinnati, etc., Gas Illuminating Co. v. Western Siemens-Lungren Co., supra, plaintiff contracted to sell to defendant certain gas lamps fitted with the most approved form of burners. The lamps as furnished were equipped with solid metal burners, and defendant claimed that plaintiff should have equipped them with tube burners, and showed that it would cost $3 each to make this change. In an action to recover the price of the lamps, defendant counterclaimed for damages. In the course of the opinion it is said: "It does not appear that the burners had ever been exchanged, or that the defendant had paid any money for the purpose of making an exchange, nor was there any testimony showing how much less in value a lamp with the solid burner was than one with the tube burner. If the defendant never made an exchange of burners, and so never expended any money therefor, and sold the lamp with a solid burner for the same price as one with a tube burner, it is difficult to see how it was damaged, even if it be conceded that the tube burner is a better appliance than the solid burner."

In Johnston Mfg. Co. v. Wilson Thread Co., supra, plaintiff brought action to recover the price of yarn furnished. Defendant pleaded that the yarn did not comply with the specifications of the contract. The contract price was 57 cents per pound. The evidence showed that some of the yarn had been resold at 57 cents per pound, some had been sold at a profit, some at a loss, and some yarn that had been resold had been returned by the customers. In the course of the opinion it is said:

"For breach of contract as to quality the measure of damages that the buyer may recover is the difference between the actual value of the article sold and the article delivered at the time and place of delivery. Gibbons v. United States, 8 Wall. 269, 19 L. Ed. 453; Parish v. United States, 8 Wall. 489, 19 L. Ed. 472; Id., 100 U. S. 500, 25 L. Ed. 763; Huguenot Mills v. Jempson, 68 S. C. 363, 47 S. E. 687, 102 Am. St. Rep. 673; Ellison v. Johnson, 74 S. C. 202, 54 S. E. 202, 5 L. R. A. (N. S.) 1151; 24 R. C. L. 348, 532.

"As there was no other evidence on the subject, the price agreed on will represent the value of the quality of yarn sold to defendant. The best evidence of the value of the defective yarn, a staple article of trade, was the price obtained for it on the market by due effort. The sale by the buyer having been made some time after it received the goods, proof should have been made of the price received by the buyer and of the difference in the market on the date the goods were received by the buyer and the time of the sale by it. 24 R. C. L. §§ 337, 376, 533; note, 42 L. R. A. (N. S.) 671. Having sold the defective yarn, defendant was bound to account to plaintiff for it, by showing what it brought and the intervening change in the market as the best test of its value."

No matter what rule for the measure of damages is invoked, where the evidence shows that the actual damage suffered has been less than would result from the application of the rule without mitigation, the recovery must be limited to such actual damages. As no damages whatever were suffered by defendant, it could not have been prejudiced by any of the rulings of the court complained of.

We have considered the other alleged errors, but are of the view that none of them present reversible error, and in view of the conclusion which we have reached, they become academic and need not be further considered.

The judgment appealed from is therefore affirmed.